# ILLINOIS OFFICIAL REPORTS

## Appellate Court

*People v. Garcia-Cordova*, **2011 IL App (2d) 070550-B**

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. DANIEL GARCIA-CORDOVA, Defendant-Appellant. |
| District & No. | Second District<br>Docket No. 2-07-0550 |
| Filed | December 20, 2011 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | Defendant's conviction for predatory criminal sexual assault of a child based on his conduct with the seven-year-old daughter of his ex-girlfriend was upheld over his contentions that the testimony of an investigator concerning the statements the victim made during an interview was improperly admitted in evidence, that the trial court erred in admitting evidence that defendant had been abused as a child, and that his sentence to 24 years' imprisonment was an abuse of discretion. |
| Decision Under Review | Appeal from the Circuit Court of Lake County, No. 06-CF-1371; the Hon. George Bridges, Judge, presiding. |
| Judgment | Affirmed. |

Counsel on
Appeal

Patricia Unsinn and Levi S. Harris, both of State Appellate Defender's Office, of Chicago, for appellant.

Michael J. Waller, State's Attorney, of Waukegan (Lawrence M. Bauer and Edward R. Psenicka, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

Panel

JUSTICE ZENOFF delivered the judgment of the court, with opinion.

Justices Burke and Hudson concurred in the judgment and opinion.

## OPINION

¶ 1    On February 8, 2007, a jury found defendant, Daniel Garcia-Cordova, guilty of three counts of predatory criminal sexual assault of a child (720 ILCS 5/12-14.1(a)(1) (West 2004)). On defendant's motion for judgment notwithstanding the verdict, the trial court entered judgments of acquittal on two of the three counts for which the jury had returned guilty verdicts. Defendant was sentenced to 24 years' imprisonment on the remaining count. Defendant filed a motion to reconsider the sentence, which the trial court denied. Defendant then appealed. We initially dismissed this appeal for lack of jurisdiction on February 27, 2009, having found that defendant's notice of appeal was premature. *People v. Garcia-Cordova*, No. 2-07-0550 (2009) (unpublished order under Supreme Court Rule 23). The Illinois Supreme Court issued a supervisory order on April 7, 2009, which vacated our February 27, 2009, order and directed us to treat defendant's notice of appeal as validly filed. On June 26, 2009, this court filed an opinion, *People v. Garcia-Cordova*, 392 Ill. App. 3d 468 (2009) (*Garcia-Cordova I*), in which we affirmed the judgment of the trial court. On March 30, 2011, in a supervisory order denying defendant's petition for leave to appeal, the Illinois Supreme Court directed us to vacate and reconsider our judgment in light of *People v. Kitch*, 239 Ill. 2d 452 (2011), to determine if a different result is warranted. In accordance with the supervisory order, we hereby vacate our prior judgment. Upon reconsideration, we affirm the judgment of the trial court.

¶ 2                                I. Background

¶ 3    On April 26, 2006, defendant was indicted on two counts of predatory criminal sexual assault of a child. Count I alleged that between April 5, 2005, and April 5, 2006, defendant, being over the age of 17, committed an act of sexual penetration with the victim, C.R., who was under the age of 13, in that defendant placed his penis in the mouth of C.R. Count II alleged that between April 5, 2005, and April 5, 2006, defendant, being over the age of 17, committed an act of sexual penetration with C.R., who was under the age of 13, in that defendant placed his finger in the vagina of C.R.

-2-

¶ 4 Following a hearing pursuant to section 115-10 of the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/115-10 (West 2006)), the trial court determined that statements C.R. had made to witness Jennifer Bare[1] were not testimonial statements pursuant to *Crawford v. Washington*, 541 U.S. 36 (2004), and were otherwise admissible under section 115-10. The trial court also determined that statements C.R. made to Christina Kruschwitz, an investigator with the Department of Children and Family Services (DCFS), were testimonial and, thus, pursuant to *Crawford*, would be admissible at trial only if C.R. were to testify at trial.

¶ 5 On July 12, 2006, defendant was indicted on six additional counts of predatory criminal sexual assault of a child. Count III alleged that between April 5, 2005, and April 5, 2006, defendant, being over the age of 17, committed an act of sexual penetration with C.R., who was under the age of 13, in that defendant placed his penis in the vagina of C.R. Counts IV through VIII contained the same allegations as count II. In response to a request for a bill of particulars, the State specified that counts IV, V, VI, and VII, were all separate and independent acts of penetration. Count VIII was nol-prossed on September 27, 2006.

¶ 6 Defendant's trial began on February 7, 2007. Jennifer Bare testified first. Bare testified that she was a student at the Scholl University Clinic in North Chicago, Illinois. While working in the clinic one day, a patient came in with her two daughters, one of whom was C.R. While the patient was getting an X-ray, Bare sat in the clinic hallway with the two little girls. Bare testified that while sitting in the hallway, C.R. asked her if she could keep a secret. Bare responded in the affirmative, after which C.R. told Bare that her father "makes [her] put his thing in [her] mouth."

¶ 7 C.R.'s mother, Michelle, testified that she had two daughters: C.R. and Danielle. C.R. was seven at the time of trial. Defendant, Michelle's ex-boyfriend, was the biological father of Danielle but not of C.R. Michelle testified that she had known defendant for six years and that she had lived with him for one year.

¶ 8 C.R. testified next. She testified to some general preliminary matters, such as her age, family members, and schooling. When asked if she lived with someone else before she lived with only her mother and Danielle, C.R. answered no. When asked if she knew somebody she called father or Daniel, she shook her head. The record does not specifically indicate whether she shook her head back and forth or nodded up and down. She did, however, identify defendant in court as the person she referred to as Danny or her stepdad. The State then asked if C.R. recalled going to a medical clinic with her mother and telling someone there a secret. C.R. testified that she did not remember doing that.

¶ 9 C.R. did testify that she recalled meeting with someone named Christina and that a person named Alan was also present when she met with Christina. C.R. testified that she recalled speaking with Christina and drawing pictures during their meeting. She did not recall why she spoke with Christina or what the room looked like when she spoke to

---

[1]Throughout the record, Bare's name is spelled in a variety of ways, including "Bare," "Bere," and "Bara." As "Bare" was the spelling given by the witness at trial and is the spelling used by the parties in their briefs, we will refer to the witness as "Bare."

Christina. C.R. identified People's Exhibit 7 as a drawing she made. When asked what the picture was about, C.R. responded, "It was a long time ago." C.R. identified herself and defendant's hand in the drawing. She gave no response when asked what defendant's hand was doing in the drawing. When asked whether she printed the words on the drawing, C.R. shook her head but gave no audible response, and the record does not specifically indicate whether C.R. shook her head back and forth or nodded up and down. When shown People's Exhibit 9, which consisted of a single sheet of paper with two separate drawings on it, C.R. identified a drawing of her, Danielle's, and defendant's faces with "blankies" below their faces. She did not recall what the blankets were on. She also identified on Exhibit 9 a drawing of herself and defendant sitting on a couch. She testified that she did not know what defendant was doing on the couch. She testified that she did not recall drawing People's Exhibit 6. C.R. testified that she did not know why she drew pictures of herself and defendant.

¶ 10 When shown People's Exhibits 1 and 2, which were charts of a female child's anatomy from the front and back, C.R. testified that she did not remember ever seeing them. C.R. testified that she recalled seeing People's Exhibit 3, a chart of a male child's anatomy from the front, but did not recall when she saw it or whether she drew anything on it. She also testified that she recalled seeing People's Exhibit 4, a chart of a male child's anatomy from the back, but did not recall when or where she saw it.

¶ 11 C.R. testified that she recalled when defendant lived with her, her mother, and her sister, but testified that she did not recall anything happening in her bedroom or on the couch. C.R. also testified that she did not know what part of the body the bottom part of a bathing suit covered and that she did not know whether there were certain parts of her body that should not be touched.

¶ 12 Defense counsel did not cross-examine C.R.

¶ 13 Sergeant Alan Lother of the Zion police department testified that as a result of receiving an incident report from DCFS in March 2006, he contacted C.R.'s mother. On April 4, 2006, he and Kruschwitz met with C.R. at the Lake County Advocacy Center. During that meeting, Lother's role was simply to take notes.

¶ 14 Lother testified that he also interviewed defendant on April 4, 2006, at the Zion police department following the meeting with C.R. Assisting Lother in interviewing defendant was Lieutenant Kirk Henderson; Lother, however, was the primary interviewer.

¶ 15 Lother testified that after reading defendant his *Miranda* rights, he informed defendant of the specific allegations that C.R. had made against him. Defendant denied having abused C.R. According to Lother, he and defendant discussed defendant's life and his relationship with C.R. and her mother. Lother testified that during that conversation defendant stated that he had been a victim of sexual abuse when he was a child. Lother testified that he then told defendant that "a lot of times people who are victims of things later on create similar situations to that; that they will treat others the same way they were treated because that is how they understand that expression." At one point, Lother suggested that defendant loved C.R. and that defendant was taught to express love through his alleged actions. According to Lother, defendant's demeanor changed from nervous to more relaxed.

¶ 16    After Lother continued to talk about defendant's abuse as a child, defendant told Lother that whatever C.R. said was true. Lother explained that defendant needed to be more specific about what happened. According to Lother, defendant then stated that about three weeks prior, he had gone into C.R.'s room, pulled down his pants, and rubbed his penis on C.R.'s lips. Lother also testified that defendant stated that he placed his penis in C.R.'s mouth, did not have an erection, and did not ejaculate. Defendant also told Lother that when he rubbed his penis on C.R.'s mouth, C.R. rolled away. Defendant informed Lother that he felt guilty about what he had done.

¶ 17    Lother testified that defendant also said that while sitting on the couch with C.R., he had reached down her pants and touched her vagina not more than five times. Lother further testified that defendant also stated that on several other occasions he had reached into C.R.'s underwear and done "similar acts" while C.R. was in his bed. Defendant did not say how many times he had done this while C.R. was in his bed. Lother testified that he spoke to defendant in a very calm manner and in a subdued tone of voice.

¶ 18    Lother testified that after defendant had related these occurrences orally, he agreed to provide a written statement. Lother provided defendant with a pen and paper, and Lother and Henderson left the room while defendant wrote the statement. After approximately 10 minutes, Lother and Henderson returned to the room and found that defendant had completed the written statement. Both defendant and Lother signed the written statement. Lother identified People's Exhibit 11 as defendant's written statement. It read:

> "I Daniel G had been sexualy [*sic*] abbused [*sic*] when I was a child and I never talk [*sic*] to eny [*sic*] one about it when it happend [*sic*]. Now I made a mistake off [*sic*] tuching [*sic*] my [d]augther [*sic*] [C.R.] on her pryvete [*sic*] part and putting my peenes [*sic*] around her lips. I need help. I'm so sorry for what I have done; never in my heart I [*sic*] want to hurt my family. But I did."

¶ 19    On cross-examination, Lother testified that during the interview, Henderson yelled at defendant three times. On redirect examination, Lother testified that as defendant was providing details of specific occurrences, he would begin to "withdraw from his confession," "back away," and make denials. According to Lother, "Henderson leaned forward and said you did do this, and you already said that. Mr. Garcia began to lower his head and withdraw from the conversation. Sergeant Henderson at the time challenged him very directly and said you did that. You said you did it. Say it with me, I stuck my penis in her mouth. And he said that t[w]o or three times." Lother testified that after Henderson made those statements to defendant, defendant said that he put his penis in C.R.'s mouth. Lother further testified, however, that this was not the first time defendant had admitted putting his penis in C.R.'s mouth. Rather, Henderson's statements were meant to bring defendant back to the admission he had already made.

¶ 20    Henderson testified that he assisted Lother in interviewing defendant, but that Lother was the primary interviewer. Henderson testified that during the interview of defendant, he did raise his voice to defendant. According to Henderson, he raised his voice with defendant because defendant had made admissions of placing his penis in C.R.'s mouth and touching her vagina under her clothes, but would then begin to recant those statements. Henderson

testified that he raised his voice with defendant to "remind him of what he had just told [the officers] and that [Henderson] wasn't going to accept and pretend that what he just told [the officers] had never taken place." Defendant would then return to his admissions. Henderson testified that he would describe the voice he used not as yelling or screaming, but as a "loud, commanding voice." Henderson did not, he testified, tell defendant anything that defendant had not previously said.

¶ 21 On cross-examination, Henderson testified that he was forceful with his voice and that he told defendant to say in unison with Henderson that defendant had stuck his penis in C.R.'s mouth. Henderson did not recall the number of times he told defendant to say that, but he did not believe it was more than twice. On redirect examination, Henderson testified that before he told defendant to say that he had stuck his penis in C.R.'s mouth, defendant had already admitted that he had stuck his penis in C.R.'s mouth. Henderson also testified that he did not raise his voice and tell defendant to say that he put his hand or finger in C.R.'s vagina.

¶ 22 Christina Kruschwitz testified next. Prior to her testimony, however, defendant requested that the trial court bar her from testifying about statements C.R. had made to her. Defendant argued that the testimony of what C.R. told Kruschwitz was inadmissible under both section 115-10 and *Crawford* because defendant was unable to cross-examine C.R. about those statements. According to defendant, C.R. was unavailable for cross-examination on the statements because while C.R. testified that she remembered meeting with Kruschwitz, she also testified that she did not remember why she met with Kruschwitz. Defendant also asked that the trial court strike Bare's testimony on the same basis. The trial court denied defendant's request, finding that C.R. was, in fact, available for cross-examination. The trial court also found, with respect to the admissibility of Kruschwitz's and Bare's testimony under section 115-10, that defendant's statement to police provided sufficient corroboration for C.R.'s statements to Kruschwitz and Bare, so as to render them admissible under section 115-10.

¶ 23 Kruschwitz testified that she was a child protection investigator with DCFS and that on April 4, 2006, she interviewed C.R. at the Lake County Children's Advocacy Center. Also present during the interview was Lother, who took notes. Kruschwitz testified that, at the beginning of the interview, she asked C.R. about the difference between the truth and a lie. When asked how C.R. responded, Kruschwitz testified, "[C.R.] gave me her definition of both the truth and a lie, which appeared to show that she understood the difference." Defense counsel objected, and the trial court sustained the objection. Kruschwitz then testified that she did not recall the definitions that C.R. gave for the truth and a lie and that the only other thing that C.R. stated about the truth and a lie was that it was better to tell the truth.

¶ 24 During the interview, Kruschwitz showed C.R. charts of the anatomy of both a male and a female child. Kruschwitz identified People's Exhibits 1, 2, 3, and 4 as the anatomical charts that she showed C.R. during the meeting. Kruschwitz testified that C.R. told her that on a female, it was not okay to touch the breasts, vagina, and belly. C.R. also told her that on a male, it was not okay to touch his "private."

¶ 25 Kruschwitz testified that she asked C.R. to tell her about the secret C.R. had shared with

the nurse (presumably Bare). According to Kruschwitz, C.R. stated that her father put his penis in her mouth. C.R. said that on a Saturday night a few weeks prior to the meeting with Kruschwitz, her father came into her bedroom, touched her lips with his penis, and then placed his penis in her mouth. C.R. then rolled off the bed onto the floor. He then tried to put his penis back into her mouth a second time before walking out of the room. C.R. told Kruschwitz that his penis was soft, nothing was on it, and nothing came out of it. Kruschwitz testified that she then asked C.R. to identify on the anatomical charts what part of her father's body was placed in her mouth and what part of her body was touched by his penis. Kruschwitz testified that C.R. circled the penis on the male chart and the mouth on the female chart.

¶ 26      Kruschwitz also testified that C.R. told her that one time while C.R. and her father were sitting on the couch, he put his hand under her underwear and put his fingers in her vagina. C.R. also told Kruschwitz that on multiple occasions (C.R. did not provide a specific number), while lying in her father's bedroom with him and her sister, he would reach over her sister, put his hand underneath her pajamas and underwear, and touch both the outside and the inside of her vagina. C.R. said that she would try to roll away from him, but that he would then try to get closer to her. Kruschwitz testified that when she asked C.R. to use the anatomical charts to demonstrate what body part her father used to touch her and where he touched her, C.R. circled the hand on the male chart and the vagina on the female chart.

¶ 27      Kruschwitz testified that during the interview, C.R. made multiple drawings. Kruschwitz identified People's Exhibit 6 as a drawing that C.R. made during the meeting. Kruschwitz testified that Exhibit 6 was a drawing of C.R. lying in her bed with her father standing next to her. According to Kruschwitz, C.R. stated that it was a picture of when her father tried to put his penis in her mouth. C.R. wrote the word "Dad" above the standing figure, circled what was supposed to be her father's penis (located in the picture just below the figure's waist), and stated that this was the part that went into her mouth. Kruschwitz testified that she wrote the words "Bed wearing P.J.'s" on the picture, because C.R. explained that she was in her bed wearing her pajamas.

¶ 28      Kruschwitz identified People's Exhibit 7 as another drawing that C.R. made during the meeting. In the picture is a large hand next to the figure of a girl. Kruschwitz testified that C.R. wrote the word "Dad" above the hand and her name above the girl. Kruschwitz testified that C.R. also wrote the words "He is touching my privant [*sic*]."

¶ 29      Finally, Kruschwitz identified People's Exhibit 9 as a piece of paper containing two drawings that C.R. made during the meeting. In the drawing on the left, there are three faces above a large rectangle. Kruschwitz testified that C.R. stated that the drawing was a picture of her, her sister, and her dad sleeping in a bed. Above the face on the left is C.R.'s name, above the face in the middle is the word "sister," and above the face on the right is the word "Dad," all written by Kruschwitz. Also written by Kruschwitz were the words "put his hand over Dan[ielle] and she scoots in corner." Kruschwitz testified that C.R. explained that her dad would put his hand over her sister to touch C.R.'s vagina. C.R. would then scoot into the corner. The drawing on the right depicts a couch with two figures sitting on it. The figure on the right, which is larger than the figure on the left, has a disproportionately long arm that is reaching toward the figure on the left. Above the smaller figure is C.R.'s name, and above

the larger figure is the word "Dad." Also written on the page is the word "hand" with a line pointing to the arm of the larger figure and the words "couch in living room." Kruschwitz testified that she wrote those words because C.R. told her that the drawing was of C.R. and her father sitting on the couch when her father touched her vagina.

¶ 30    On cross-examination, Kruschwitz testified that as an investigator with DCFS, she is required to notify law enforcement when an allegation of child sexual abuse is received and to set up an interview with the child.

¶ 31    Following Kruschwitz's testimony, the State rested. Defendant made a motion for a directed verdict, and the trial court granted it as to counts III, VI, and VII, but denied it as to counts I, II, IV, and V. Defendant rested without presenting the testimony of any witnesses. Following closing arguments, the case was tendered to the jury. The jury returned verdicts of guilty on counts I, II, and V, and a verdict of not guilty on count IV.

¶ 32    Defendant filed a motion for judgment notwithstanding the verdict or, alternatively, for a new trial. At the hearing on the motion, defendant argued, among other things, that defendant's confrontation rights, as delineated in *Crawford*, were violated when C.R. was unavailable for cross-examination at trial but her statements to Bare and Kruschwitz were admitted through their testimony. The State argued that C.R. did testify, for purposes of defendant's confrontation rights, when she identified the drawings she made during her meeting with Kruschwitz and stated that she had created them. The State contended that through those drawings, C.R. testified as to the substance of the allegations against defendant. The trial court found that the statements C.R. made to Bare were not testimonial and, thus, were not subject to *Crawford*. The trial court also found, however, that the statements C.R. made to Kruschwitz were testimonial and, thus, subject to *Crawford*. The trial court found that, because C.R. was not available at trial for cross-examination, the statements C.R. made to Kruschwitz should have been excluded under *Crawford*. Consequently, the trial court entered judgments of acquittal as to counts II and V, but denied defendant's motion as to count I, finding that the "statutory and constitutional safeguards were followed" with respect to that count. To refresh the reader's recollection, count I charged defendant with placing his penis in C.R.'s mouth. C.R. volunteered this information to Bare in a nontestimonial statement, and the statement was corroborated by defendant's admissions to the police. Thus, Bare's testimony was properly before the jury.

¶ 33    The trial court then held the sentencing hearing, during which it sentenced defendant to 24 years' imprisonment on count I. Following an unsuccessful motion to reconsider the sentence, defendant appealed. We initially dismissed this appeal for lack of jurisdiction on February 27, 2009, having found that defendant's notice of appeal was premature. *People v. Garcia-Cordova*, No. 2-07-0550 (2009) (unpublished order under Supreme Court Rule 23). The Illinois Supreme Court issued a supervisory order on April 7, 2009, which vacated our February 27, 2009, order and directed us to treat defendant's notice of appeal as validly filed.

¶ 34                                          II. Analysis
¶ 35                              A. The Opinion in *Garcia-Cordova I*
¶ 36    On appeal, defendant raised three issues: (1) whether Kruschwitz's testimony regarding

C.R.'s statements during the interview was inadmissible under *Crawford*; (2) whether the trial court erred in admitting evidence that defendant had been sexually abused as a child; and (3) whether the trial court abused its discretion in sentencing defendant to 24 years' imprisonment.

¶ 37    With respect to the first issue, we acknowledged that under *People v. Melchor*, 226 Ill. 2d 24, 33-34 (2007), and *In re E.H.*, 224 Ill. 2d 172, 179 (2006), we were obliged to determine the admissibility of out-of-court statements as an evidentiary matter before considering any constitutional claims. *Garcia-Cordova I*, 392 Ill. App. 3d at 479. However, because defendant conceded that the out-of-court statements were admissible under evidentiary principles, we proceeded to review defendant's constitutional claim. *Garcia-Cordova I*, 392 Ill. App. 3d at 479. We held that C.R.'s testimony fell within the memory-loss rule of *United States v. Owens*, 484 U.S. 554 (1988), *Delaware v. Fensterer*, 474 U.S. 15 (1985), and *People v. Flores*, 128 Ill. 2d 66 (1989). *Garcia-Cordova I*, 392 Ill. App. 3d at 483. In *Flores*, applying *Fensterer* and *Owens*, our supreme court declared that a gap in a witness's recollection concerning the content of a prior statement does not necessarily preclude an opportunity for effective cross-examination. *Flores*, 128 Ill. 2d at 88. In *Garcia-Cordova I*, we concluded that C.R. was available for cross-examination where she appeared at trial and testified under oath. She made an in-court identification of defendant; she testified that she recalled speaking with Kruschwitz and that Lother was present when she spoke with Kruschwitz; she testified that during her meeting with Kruschwitz she made drawings, some of which she identified during her testimony, and, although C.R. did not recall what activities were depicted in the drawings, or why she made the drawings, she answered all of the prosecutor's questions on that subject. *Garcia-Cordova I*, 392 Ill. App. 3d at 483-84. We said that, even though defendant chose not to cross-examine C.R., we could not conclude that she was unavailable had defendant chosen otherwise. *Garcia-Cordova I*, 392 Ill. App. 3d at 484.

¶ 38    We then went on to conduct a harmless-error analysis and concluded that any error in the admission of the entirety of Kruschwitz's testimony was harmless because it was duplicative and cumulative of properly admitted evidence and because the evidence of defendant's guilt on count I (the only count of which he was convicted after the trial court granted his motion for judgment notwithstanding the verdict on the other two counts) was overwhelming. *Garcia-Cordova I*, 392 Ill. App. 3d at 485-86.

¶ 39    With respect to defendant's second and third issues, we held that the trial court did not err in admitting the evidence of defendant's sexual abuse as a child and that the sentence of 24 years' imprisonment was not an abuse of discretion. *Garcia-Cordova I*, 392 Ill. App. 3d at 489, 492.

¶ 40    On March 30, 2011, our supreme court denied defendant's petition for leave to appeal, but in a supervisory order directed us to vacate our judgment and reconsider it in light of *Kitch*. We proceed now to reconsider our decision. We asked the parties to submit supplemental briefs, which they have done, to aid us in our effort. Before we reach their respective arguments, we will review *Kitch*.

¶ 41                                    B. The Decision in *Kitch*

¶ 42        A jury convicted the defendant, Richard Kitch, of nine counts of predatory criminal sexual assault of a child and one count of aggravated criminal sexual abuse. *Kitch*, 239 Ill. 2d at 455. The appellate court modified the defendant's sentence, but affirmed the convictions. *Kitch*, 239 Ill. 2d at 455.[2] Before the Illinois Supreme Court, the defendant argued, *inter alia*, that the child victims did not testify in enough detail to have appeared for cross-examination within the meaning of the confrontation clause. *Kitch*, 239 Ill. 2d at 460.

¶ 43        Pursuant to section 115-10 of the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/115-10 (West 2004)), the trial court held that out-of-court statements made by the victims, K.J.K. and M.J.B., to the Schuyler County sheriff and one of his employees were admissible at trial if the children testified. *Kitch*, 239 Ill. 2d at 456. At trial, the sheriff and his employee testified to the victims' statements. *Kitch*, 239 Ill. 2d at 457-58. In addition, an obstetric gynecologist who examined K.J.K. testified that it was highly likely that K.J.K. had been abused. *Kitch*, 239 Ill. 2d at 456-57. Forensic scientists testified that a semen stain on K.J.K's comforter matched the defendant's DNA profile. *Kitch*, 239 Ill. 2d at 459.

¶ 44        At trial, K.J.K. testified consistently with her out-of-court statement regarding the defendant forcing his penis into her mouth, between her legs, and into her vagina. *Kitch*, 239 Ill. 2d at 458. She also testified that, a couple of months after the defendant began putting his penis between her legs, he started putting his fingers in her vagina, telling her he was doing it so his penis would eventually fit. *Kitch*, 239 Ill. 2d at 458. K.J.K. described an instance when the defendant's ejaculate dripped onto her comforter and the defendant told her to wipe it up with paper towels. *Kitch*, 239 Ill. 2d at 458-59. K.J.K. testified about the defendant rubbing her breasts with cocoa butter, showering with her, and tattooing her right buttock. *Kitch*, 239 Ill. 2d at 459.

¶ 45        At trial, M.J.B. also testified consistently with his out-of-court statement that, when he was about eight years old, the defendant touched his penis in his bedroom. *Kitch*, 239 Ill. 2d at 459. M.J.B. testified that other incidents occurred in the bathroom, including one occasion when the defendant forced M.J.B. to touch the defendant's penis and three or four other occasions when the defendant put his penis in M.J.B.'s mouth. *Kitch*, 239 Ill. 2d at 459.

¶ 46        The defendant argued before the supreme court that K.J.K. and M.J.B. did not testify in enough detail to have appeared for cross-examination within the meaning of the confrontation clause, because the State failed to establish through their testimony each and every element of every count against him. *Kitch*, 239 Ill. 2d at 460. As a result, the defendant argued that he was unable to engage in effective cross-examination. *Kitch*, 239 Ill. 2d at 460.

---

[2]The Fourth District originally decided *Kitch* in an unpublished order pursuant to Supreme Court Rule 23 (eff. July 1, 1994). In a supervisory order, the supreme court directed the appellate court to vacate its order and reconsider its judgment in light of *In re Rolandis G.*, 232 Ill. 2d 13 (2008). Upon reconsideration, the appellate court again affirmed, holding that the issue was whether the child victims had appeared for cross-examination within the meaning of the confrontation clause, an issue not addressed in *Rolandis G.* since the State there conceded that the victim was not available to testify at trial. *People v. Kitch*, 392 Ill. App. 3d 108, 121 (2009).

Our supreme court considered this claim under the plain-error doctrine and first looked to see whether error occurred. *Kitch*, 239 Ill. 2d at 462. "In making this determination, we consider whether, as defendant argues, the State improperly failed to ask the victims about each incident in enough detail to establish the elements of each count." *Kitch*, 239 Ill. 2d at 462. The court then set forth each count and the elements of each count. *Kitch*, 239 Ill. 2d at 462. The court stated that it was undisputed that the defendant was over the age of 17 and the victims were under the age of 13 when the offenses occurred. *Kitch*, 239 Ill. 2d at 463. "The question, then, is whether the State, through the victims' direct testimony, proved 'an act of sexual penetration' with regard to counts IV through VI and IX and XI, and 'an act of sexual conduct' with regard to count VII." *Kitch*, 239 Ill. 2d at 463.

¶ 47 The supreme court observed that K.J.K.'s testimony was "somewhat unclear" as to when every incident occurred, but that it nevertheless established in detail that three acts occurred between June 2002 and March 2003 that corresponded with counts against the defendant. *Kitch*, 239 Ill. 2d at 463. K.J.K.'s additional detailed testimony as to the acts the defendant committed upon her established abuse from February 2000 to March 2003. *Kitch*, 239 Ill. 2d at 463. The supreme court held that M.J.B.'s detailed testimony also corresponded to the allegations in the relevant counts. *Kitch*, 239 Ill. 2d at 463-64. The court stated:

"Accordingly, K.J.K.'s and M.J.B.'s direct testimony, standing alone, was sufficient to establish the elements of the relevant counts against defendant. We also conclude, largely for this reason, that K.J.K.'s and M.J.B.'s direct testimony was sufficient to allow for effective cross-examination. Their direct testimony provided enough detail to allow for cross-examination within the meaning of the confrontation clause. Our review of the record shows that both K.J.K. and M.J.B. answered all of the questions put to them by defense counsel on cross-examination. Their answers were forthright. There was no indication they were being evasive." *Kitch*, 239 Ill. 2d at 464.

¶ 48 The supreme court then stated that there was nothing in this court's decision in *People v. Learn*, 396 Ill. App. 3d 891 (2009), a case on which the defendant relied for the proposition that the victim must give accusatory testimony, that compelled a different result. *Kitch*, 239 Ill. 2d at 464. The supreme court distinguished the facts in *Learn*, where the victim's direct testimony was not incriminating, from the facts in *Kitch*, where K.J.K. and M.J.B. accused the defendant of multiple acts of sexual abuse through their direct testimony. *Kitch*, 239 Ill. 2d at 465. Our supreme court held that there was no error in the admission of K.J.K.'s and M.J.B.'s out-of-court statements, because they appeared for cross-examination within the meaning of the confrontation clause. *Kitch*, 239 Ill. 2d at 465.

¶ 49 We now consider whether *Kitch* requires a different result in this case than the one we initially reached.

¶ 50 C. Whether *Kitch* Established a New Constitutional
Rule in Memory-Loss Cases

¶ 51 Before we launch our analysis, we again briefly recount C.R.'s trial testimony in the instant case. She testified to her age, family members, and schooling. She denied living with someone else besides her mother and Danielle, and she shook her head (the record does not

reflect the direction of the head shake) when asked if she knew somebody she called father or Daniel. However, she identified defendant in court as the person she referred to as Danny or her stepdad. C.R. did not remember going to a medical clinic and telling someone there a secret. She recalled a meeting with Kruschwitz at which Lother was present, and she remembered speaking with Kruschwitz and drawing pictures during their meeting. She did not recall why she met with Kruschwitz or what the room looked like where they met. C.R. identified Exhibit 7, one of her drawings, but said "It was a long time ago" when she was asked what the drawing was about. She identified herself and defendant's hand in the drawing, but she did not respond to the question of what defendant's hand was doing. She identified another drawing of her, Danielle's, and defendant's faces with blankets below the faces, but she did not recall what the blankets were on. She identified a drawing of herself and defendant sitting on a couch. When shown Exhibit 6, another drawing, C.R. did not recall making it. She testified that she did not know why she drew any of the pictures of herself and defendant. She did not remember seeing female anatomy charts; she did recall having seen a male anatomy chart, but did not recall when or where she saw it. She recalled when defendant lived with her, her mother, and her sister, but she did not recall anything happening in her bedroom or on the couch. She did not know what part of the body the bottom part of a bathing suit covered, and she did not know whether there were certain parts of her body that should not be touched.

¶ 52    Defendant did not cross-examine C.R.

¶ 53    In this appeal, defendant urges us to reverse his conviction based on what he says in his supplemental briefs is the dual doctrine established by *Learn-Kitch*: that a victim's testimony must be accusatory and must establish each of the elements of the counts against a defendant in order for the victim to have appeared for cross-examination. At oral argument, defendant clarified his position with respect to *Kitch*. Defendant premises his argument on his belief that the supreme court in *Kitch* adopted, or at least approved of, *Learn*'s analysis[3] and then went further to approve a standard whereby the victim's direct testimony established the elements of each count. However, defendant is not arguing the position the defendant took in *Kitch*, that the victim must testify to each element of the offense. Instead, pursuant to defendant's understanding of the holding in *Learn*, defendant contends that C.R. did not give accusatory testimony against him and so did not satisfy either the *Learn* or the *Kitch* standards. He thus concludes that his constitutional right to confront the witnesses against him was violated. We review *de novo* whether a person's constitutional rights have been violated. *People v. Burns*, 209 Ill. 2d 551, 560 (2004).

¶ 54    Section 115-10 of the Code provides that, in a prosecution for a physical or sexual act perpetrated upon or against a child under the age of 13, certain out-of-court statements made by the child may be admitted at trial as an exception to the hearsay rule where (1) the trial

_____

[3]*Learn* decided the issue of whether the child victim testified for purposes of section 115-10 and said that the Code requires the child victim, if she is the only witness other than hearsay reporters who can accuse the defendant of actions constituting the charged offense, to testify and accuse. *Learn*, 396 Ill. App. 3d at 900. However, for this court's further treatment of *Learn*, see *People v. Martin*, 408 Ill. App. 3d 891, 897 (2011), discussed later in this opinion.

court conducts a hearing outside the presence of the jury to determine the reliability of the statements; and (2) the child testifies at trial or is unavailable and there is corroborative evidence of the act that is the subject of the statement. 725 ILCS 5/115-110 (West 2006). Here, defendant conceded that the out-of-court statements C.R. made to Bare and Kruschwitz were admissible under section 115-10. The question is whether defendant was deprived of an opportunity to cross-examine C.R. concerning her prior statements to Kruschwitz so that their admission violated the confrontation clause of the sixth amendment to the United States Constitution.

¶ 55    In *Crawford*, the United States Supreme Court held that, under the confrontation clause, a testimonial statement of a witness who does not testify at trial is inadmissible unless (1) the witness is unavailable to testify, and (2) the defendant had a prior opportunity for cross-examination. *Crawford*, 541 U.S. at 53-54. Subsequently, in *Davis v. Washington*, 547 U.S. 813 (2006), the Court made clear that the confrontation clause does not apply to nontestimonial statements. *Davis*, 547 U.S. at 821. In the present case, the State concedes that C.R.'s statements to Kruschwitz were testimonial.

¶ 56    The Supreme Court in *Crawford* also held that where "the declarant appears for cross-examination at trial, the Confrontation Clause places no constraints at all on the use of his prior testimonial statements." *Crawford*, 541 U.S. at 59 n.9. Thus, the issue is whether C.R. appeared for cross-examination where she did not remember or recall certain things and did not know others. In *Garcia-Cordova I*, we said that this case was akin to the memory-loss cases of *Fensterer* and *Owens*. *Garcia-Cordova I*, 392 Ill. App. 3d at 483. Nothing in *Kitch* dissuades us from that view, as *Kitch* did not involve memory loss and did not touch upon the cases dealing with memory loss.

¶ 57    In *Fensterer*, an expert witness's inability to recall the basis for his opinion did not implicate the confrontation clause. *Fensterer*, 474 U.S. at 21. In *Owens*, a federal prison guard who was beaten by an inmate could not remember his assailant at trial, but remembered identifying the defendant as his assailant in a prior conversation with an FBI agent. *Owens*, 484 U.S. at 556. The Supreme Court held that the confrontation clause was not implicated where the witness testified to a past belief but was unable to recollect the reason for his past belief. *Owens*, 484 U.S. at 559. The Court explained that the confrontation clause gives the accused the right to be confronted with the witnesses against him, which has been read as securing an adequate opportunity to cross-examine adverse witnesses. *Owens*, 484 U.S. at 557.

¶ 58    Our supreme court followed *Fensterer* and *Owens* in *Flores*. In *Flores*, the defendant claimed that his right to confrontation was violated where the grand jury testimony of a State witness–who stated at trial that he could not recall having a conversation with the defendant concerning the victim's death and could not recall the content of his grand jury testimony–was introduced as substantive evidence. *Flores*, 128 Ill. 2d at 88. Our supreme court held that "a gap in the witness' recollection concerning the content of a prior statement does not necessarily preclude an opportunity for effective cross-examination." *Flores*, 128 Ill. 2d at 88. In *People v. Sutton*, 233 Ill. 2d 89 (2009), our supreme court again interpreted *Owens* in deciding that a witness who recalled making out-of-court statements but did not recall what they were was available for cross-examination. *Sutton*, 233 Ill. 2d at 122-23.

¶ 59    Thus, the United States Supreme Court and the Illinois Supreme Court have squarely held that a witness's memory loss does not implicate the confrontation clause. We conclude that our supreme court in *Kitch* did not hold otherwise, because it surely would not have overruled *Flores* and *Sutton* without saying so.[4] Moreover, *Fensterer* and *Owens* remain the supreme law of the land, which further leads us to conclude that our supreme court would not have staked out constitutional territory in direct opposition to the Supreme Court of the United States. Indeed, in *Flores* and *Sutton*, our supreme court made clear that *Fensterer* and *Owens* "govern the question of whether a witness 'has appeared for cross-examination' within the meaning of the confrontation clause." *People v. Tracewski*, 399 Ill. App. 3d 1160, 1167-68 (2010) (Steigmann, J., specially concurring).

¶ 60    It became clear at oral argument that defendant does not take issue with the foregoing discussion. Rather, defendant distinguishes the *Fensterer-Owens-Flores* trilogy by arguing that *Learn* takes the instant case outside the memory-loss cases. It is useful first to dissect defendant's construction of *Learn* and then to scrutinize the conclusion he draws. Defendant contends that *Learn* held that a hearsay declarant must give accusatory testimony. Defendant acknowledges that *Learn* was decided under section 115-10, but argues that *Kitch*, which was decided under the confrontation clause, cited *Learn* with approval. Defendant then draws the conclusion that *Learn* requires the *State* to confront the witness with his or her out-of-court statement where the witness testifies that he or she does not remember giving the out-of-court statement. Only in this fashion, defendant argues, can the witness be said to be present to explain or deny the statement.

¶ 61    Defendant's argument ignores a couple of things about *Learn*. First, *Learn* held that the victim must give accusatory testimony where the victim is the only witness other than hearsay reporters who can accuse the defendant of actions constituting the charged offense. *Learn*, 396 Ill. App. 3d at 900. In our case, C.R. was not the only witness other than hearsay reporters. Defendant's statements to the police corroborated C.R.'s out-of-court statements. To this extent, *Learn* is not even applicable to our case. Second, we disagree that our supreme court cited *Learn* for any purpose other than to distinguish it. We reject defendant's attempt to recast his right to confront witnesses as the State's burden to confront witnesses. It is the accused who has the right to be confronted with the witnesses against him. *Pointer v. Texas*, 380 U.S. 400, 404-05 (1965).

¶ 62    The foregoing compels us to determine that in *Kitch* our supreme court simply held that the evidence was sufficient to establish each element of each count. The court then distinguished *Learn* rather than adopting it. In *People v. Martin*, 408 Ill. App. 3d 891 (2011), this court said that in *Learn* the issue was one of competency. *Martin*, 408 Ill. App. 3d at 897. We explained the context in which we used the term "competency" when we said, "[T]he witness was unable to testify and, as a result, did not answer any substantive questions. Thus, there was no ability for the witness to respond at all, even if only to state a

---

[4]For a discussion of the considerable body of appellate court case law on this subject, see *People v. Bryant*, 391 Ill. App. 3d 1072, 1093-1096 (2009). *Kitch* did not expressly or otherwise overrule these cases.

lack of memory, leading also to the inability to cross-examine the witness." *Martin*, 408 Ill. App. 3d at 897.[5] Whether we call it competency or availability, the real distinction between *Learn* and our case is that in *Learn*, although the witness had initially been found competent by the trial judge, when questioned by counsel she actually lacked the ability to answer the questions propounded by counsel. In the present case, C.R. answered the questions put to her either verbally or with a head shake except for the question of what defendant's hand was doing, to which she made no response. Her answers that she did not recall why she spoke with Kruschwitz and did not recall anything happening in her bedroom or on the couch place this case within the *Fensterer-Owens-Flores-Sutton* doctrine. Defendant argues that in *Fensterer* and *Owens* the witnesses gave accusatory testimony but could not remember the bases for the accusations. Defendant similarly distinguishes *Flores* on the basis that the witness remembered giving testimony before the grand jury. However, we believe that those cases all stand for the broader principle that the confrontation clause is not implicated where a hearsay declarant is present at trial and subject to unrestricted cross-examination. Memory loss can occur on a continuum. We do not have to decide at what point it may become a denial of the right of confrontation, because in the instant case, C.R. testified in enough detail that she could have been cross-examined.

¶ 63 In our case, defendant chose not to cross-examine C.R. This appears to be a matter of trial strategy because, as we pointed out in *Garcia-Cordova I*, there were topics upon which she could have been cross-examined, such as the descriptions in her drawings, her inability to remember why she spoke with Kruschwitz, and the alleged incidents of abuse. Defendant argues that, "critically," C.R. did not remember Exhibit 6, a drawing that pertained to count I, the sole count upon which he was convicted. However, her lack of memory could have been probed on cross-examination. Where a defendant does not attempt to cross-examine a witness on her out-of-court statements, he cannot complain that the witness was unavailable for cross-examination. *People v. Lewis*, 223 Ill. 2d 393, 405 (2006). A witness who is present for cross-examination and answers questions is available for cross-examination even when defense counsel chooses to let the witness's direct testimony stand. *People v. Major-Flisk*, 398 Ill. App. 3d 491, 506 (2010). We agree with the court in *People v. Lara*, 2011 IL App (4th) 080983-B, ¶ 51:

> "In a situation such as this, defense counsel is placed in a precarious position. In general, during any trial, an attorney does not want to ask a question if he does not know how the witness will answer. Further, an attorney surely does not want to elicit an answer that will implicate his client. However, strategic considerations such as these do not make the witness unavailable for cross-examination."

¶ 64 Our conclusion that *Kitch* was decided on its facts rather than announcing a shift in constitutional law is bolstered by consideration of the way in which out-of-court statements

---

[5]Justice McLaren, who authored *Learn*, concurred in *Martin*. In *Learn*, the court said that it declined to reach the issue of the witness's competency. While *Martin* states that *Learn* and *Rolandis G.* dealt with the issue of competency, those cases concerned the availability of the witnesses.

under section 115-10.1 of the Code (725 ILCS 115-10.1 (West 2008)) are treated, which we examine in the next section.

¶ 65                             D. The Constitutional Nonevent

¶ 66     The issue presented by the admission of hearsay is constitutionally identical in a child sex abuse case and a murder case, and the response of the sixth amendment is identical in both types of cases. *People v. Bryant*, 391 Ill. App. 3d 1072, 1090 (2009). *Crawford* very simply says that, where the declarant appears for cross-examination at trial, the confrontation clause places no constraints at all on the use of his prior testimonial statements. *Crawford*, 541 U.S. at 59 n.9. Where the declarant appears for cross-examination, even where the declarant does not testify to the substance of his hearsay statement, its admission is a nonevent under the confrontation clause. *Bryant*, 391 Ill. App. 3d at 1090. This court recently so held in *Martin*.

¶ 67     In *Martin*, the defendant was indicted on two counts of domestic battery and one count of aggravated battery arising out of a physical altercation with his girlfriend, Shannon Hosey. *Martin*, 408 Ill. App. 3d at 892. Hosey provided a written statement to the police, stating that the defendant hit her while she was driving. *Martin*, 408 Ill. App. 3d at 892. At trial, Hosey said she had been drinking and did not remember having an argument with the defendant, did not remember an altercation or injuries, and did not remember talking to the police, although she recognized her handwriting on the written statement. *Martin*, 408 Ill. App. 3d at 892. The trial court allowed the State to use Hosey's written statement, not just for impeachment, but for substantive evidence. *Martin*, 408 Ill. App. 3d at 893. The trial court found the defendant guilty, and he appealed, arguing that Hosey's written statement was wrongly allowed into evidence in violation of his right to confrontation. *Martin*, 408 Ill. App. 3d at 893.

¶ 68     This court first determined that Hosey's written statement was admissible as an evidentiary matter under section 115-10.1, which allows a witness's prior inconsistent statement to be admitted if the witness is subject to cross-examination concerning the statement and the statement explained events of which the witness had personal knowledge and the witness acknowledges under oath the making of the statement. 725 ILCS 5/115-10.1 (West 2008). Despite its admissibility under section 115-10.1, the defendant argued that admission of the written statement violated his right to confrontation because Hosey's memory loss made meaningful cross-examination impossible. *Martin*, 408 Ill. App. 3d at 895. We said that Hosey appeared for cross-examination because she physically appeared at trial and was cross-examined by defense counsel; she was able to answer questions and willingly did so. *Martin*, 408 Ill. App. 3d at 896. "We agree that [Hosey's] alleged lack of memory did not create confrontation-clause problems merely because it precluded her from being cross-examined to the extent that [the defendant] would have liked." *Martin*, 408 Ill. App. 3d at 896-97. We held that *Learn* and *In re Rolandis G.*, 232 Ill. 2d 13 (2008), did not dictate the opposite conclusion, because both *Learn* and *Rolandis G.* involved situations where the victims were unable or unwilling to testify. *Martin*, 408 Ill. App. 3d at 897.

¶ 69     The point is that, if the confrontation clause did not bar the admission of Hosey's prior written statement in a battery prosecution, it would not bar admission of a similar statement

-16-

in a child sex abuse case where the victim appeared on the witness stand and answered questions, assuming the admissibility of the out-of-court statement under section 115-10. In *Owens*, the Supreme Court said that ordinarily a witness is regarded as subject to cross-examination when he is placed on the stand, under oath, and responds willingly to questions. *Owens*, 484 U.S. at 561.

¶ 70    We do not believe that our supreme court in *Kitch* would intend to upend all of the existing case law on this subject and not explicitly say so. We read no implication into the supervisory order that directed us to reconsider the present case in light of *Kitch*, because this issue is so important that our supreme court in *Kitch*, being fully capable of explicitly saying that it was making new law, would have said so if that was what it meant to do.

¶ 71    Even if we were to conclude that C.R. was unavailable for cross-examination and that defendant's confrontation rights under *Crawford* were thus violated by the admission of Kruschwitz's testimony, we determine that such an error was harmless. Violations of a defendant's confrontation rights under *Crawford* are subject to harmless-error review. *Rolandis G.*, 232 Ill. 2d at 43. The question is whether it appears beyond a reasonable doubt that the error did not contribute to the verdict obtained. *Rolandis G.*, 232 Ill. 2d at 43 (citing *People v. Stechly*, 225 Ill. 2d 246, 304 (2007)). "When deciding whether error is harmless, a reviewing court may (1) focus on the error to determine whether it might have contributed to the conviction; (2) examine the other properly admitted evidence to determine whether it overwhelmingly supports the conviction; or (3) determine whether the improperly admitted evidence is merely cumulative or duplicates properly admitted evidence." *Rolandis G.*, 232 Ill. 2d at 43.

¶ 72    We determine that Kruschwitz's testimony regarding C.R.'s statements was merely cumulative and duplicative of the properly admitted evidence presented at trial. With respect to the allegation that defendant placed his penis in C.R.'s mouth (the conduct alleged in count I, which was the only count on which a judgment of conviction was entered), Kruschwitz testified that C.R. stated that a few weeks prior to the meeting with Kruschwitz, defendant came into her bedroom, touched her lips with his penis, and then placed his penis in her mouth. C.R. stated that she then rolled off the bed onto the floor, at which point defendant tried a second time to place his penis in her mouth. Kruschwitz also testified that C.R. stated that defendant's penis was soft, nothing was on it, and nothing came out of it. These statements are nearly identical to the oral statement defendant gave to Lother and Henderson. Lother testified that defendant stated that three weeks prior to the interview (which took place the same day that Kruschwitz met with C.R.), he went into C.R.'s bedroom, pulled down his pants, rubbed his penis on C.R.'s lips, and then placed his penis in C.R.'s mouth. Defendant also told Lother that when he did this, C.R. rolled away. Further, just as C.R. described defendant's penis as being soft, having nothing on it, and not producing anything, defendant told Lother that he did not have an erection and did not ejaculate. In addition, Bare testified that C.R. told her that defendant made her put his "thing" in her mouth.

¶ 73    Defendant contends that Kruschwitz's testimony regarding C.R.'s statements was substantially more detailed than the other evidence and that People's Exhibit 6 (which, according to Kruschwitz, depicted defendant in C.R.'s room when he put his penis in her

-17-

mouth) made the allegations "all the more vivid." We disagree. As discussed above, the oral statement that defendant gave to Lother and Henderson was just as detailed as C.R.'s statements to Kruschwitz. We note specifically that defendant described the same sequence of events as C.R.: touching his penis to her lips followed by putting his penis in her mouth. Both C.R. and defendant stated that C.R. rolled away, and both stated, in different terms, that defendant's penis was not erect and that he did not ejaculate. People's Exhibit 6 did not depict anything other than what defendant described to Lother and Henderson. In fact, defendant's statement was far more descriptive than the picture, as he described the specific physical contact that took place in C.R.'s bedroom, while the picture shows only C.R. in her bed with defendant standing next to her.

¶ 74    Defendant also argues that the admission of Kruschwitz's testimony was not harmless because she asked questions to determine whether C.R. knew the difference between the truth and a lie, adding credibility to C.R.'s statements and undermining defendant's chief defense, that his statement to police was coerced. Again, we disagree. Kruschwitz testified that she attempted to establish whether C.R. knew the difference between the truth and a lie. Her testimony that C.R. appeared to know the difference between the truth and a lie, however, was objected to by defense counsel and the trial court sustained the objection. The State was unable to elicit any other testimony that established that, during the interview with Kruschwitz, C.R. demonstrated that she knew the difference between the truth and a lie. At most, the admitted portions of Kruschwitz's testimony established that C.R. knew that it was better to tell the truth than to tell a lie; it did not establish, however, that C.R. knew what the truth was as opposed to a lie.

¶ 75    We also conclude that any error in the admission of the entirety of Kruschwitz's testimony was harmless because the evidence of defendant's guilt on count I was overwhelming, even putting aside Kruschwitz's testimony. In addition to Bare's testimony regarding C.R.'s statement that defendant made her put his "thing" in her mouth, the State presented defendant's very specific oral statement to police and his written statement. In his written statement, defendant simply stated that he put his penis around C.R.'s lips. In his oral statement to police, however, defendant provided great detail, explaining that, approximately three weeks prior to the interview, he entered C.R.'s bedroom, pulled down his pants, and rubbed his penis on C.R.'s lips, at which point C.R. rolled away. He stated that he then put his penis in C.R.'s mouth. In addition, defendant told police that he did not have an erection and that he did not ejaculate. All of the evidence presented at trial was consistent with defendant's confession.

¶ 76    Defendant argues that his oral statement to police "did not jibe with" his written statement, in that he orally told police that he put his penis in C.R.'s mouth, while in his written statement he stated that he put his penis "around [C.R.'s] lips." Defendant ignores, however, that Lother testified that defendant also orally stated that he rubbed his penis on C.R.'s lips. Such evidence certainly corresponds with defendant's written statement and describes the element of sexual penetration.

¶ 77    Defendant also contends that Lother's and Henderson's testimony that during the interview Henderson yelled at defendant in a "loud, commanding voice" indicates that defendant's statement may have been coerced. This contention is equally without merit, as

the uncontradicted testimony of both Lother and Henderson demonstrates that Henderson did not use his "loud, commanding voice" until *after* defendant had already admitted that he had rubbed his penis on C.R.'s lips and put his penis in her mouth. We cannot agree that defendant's admissions were coerced by something that did not occur until after defendant had already made the admissions.

¶ 78    Accordingly, we conclude that the evidence of defendant's guilt on count I was overwhelming. See *People v. Harris*, 389 Ill. App. 3d 107, 118-24 (2009) (determining the exclusion of certain testimony was harmless because the defendant's confession, corroborated only by the fact that the victim's death was a homicide, was overwhelming evidence of the defendant's guilt, despite the defendant's contention that her confession was coerced); *People v. Spicer*, 379 Ill. App. 3d 441, 458 (2007) (holding that the improper admission of evidence was harmless where the defendant's unrefuted and unrecanted statement that he had put his finger in the victim's vagina was overwhelming evidence that the defendant had penetrated the victim); *People v. Argo*, 133 Ill. App. 3d 421, 430 (1985) (concluding that exclusion of certain evidence was harmless where the defendant's confession–the only evidence connecting the defendant to the murder–provided overwhelming evidence supporting the defendant's conviction).

¶ 79    As we find that Kruschwitz's testimony regarding C.R.'s statements to her was merely cumulative and duplicative of the properly admitted evidence and that the evidence of defendant's guilt was overwhelming, we find any error in the admission of Kruschwitz's testimony regarding C.R.'s statements to be harmless. See *Rolandis G.*, 232 Ill. 2d at 43 (error is harmless where improperly admitted evidence is merely cumulative or duplicative of the properly admitted evidence).

¶ 80                        E. Evidence of Sexual Abuse

¶ 81    Defendant next contends that the trial court erred in admitting evidence that defendant had been sexually abused as a child. Defendant argues that, because it is well known that people who are sexually abused as children are more likely as adults to sexually abuse others and because evidence that defendant had been sexually abused went only to show propensity, such evidence was irrelevant and unduly prejudicial. We disagree that the trial court erred in admitting the evidence.

¶ 82    Evidence is admissible when it is relevant to an issue in dispute and its probative value is not substantially outweighed by its prejudicial effect. *People v. Gonzalez*, 142 Ill. 2d 481, 487 (1991). "Evidence is considered relevant if it has any tendency to make the existence of any fact that is of consequence to the determination of an action either more or less probable than it would be without the evidence." *People v. Morgan*, 197 Ill. 2d 404, 455-56 (2001). It is within the trial court's discretion to determine whether evidence is relevant and admissible, and the trial court's decision on the issue will not be reversed absent an abuse of discretion. *Morgan*, 197 Ill. 2d at 455. A trial court abuses its discretion where its decision is arbitrary, fanciful, or unreasonable or where no reasonable person would take the trial court's view. *Morgan*, 197 Ill. 2d at 455.

¶ 83    In the present case, the trial court found the evidence that defendant had been sexually

-19-

abused as a child to be relevant because such evidence could establish a motive on defendant's part. We need not decide whether the evidence that defendant had been sexually abused as a child was relevant to the issue of motive, because we determine that it was relevant to the credibility of defendant's statements to police and the context in which he made them. See *People v. Jefferson*, 184 Ill. 2d 486, 498 (1998) (stating that the issue of the credibility of a confession is an issue for the jury and evidence weighing on the credibility of the confession may be presented); see also 725 ILCS 5/114-11(f) (West 2006) ("The circumstances surrounding the making of the confession may be submitted to the jury as bearing upon the credibility or the weight to be given to the confession."). Although the relevance of the disputed evidence in the context of the police's interrogation of defendant was not addressed by the trial court, we may affirm for any reason warranted by the record, regardless of the reasons relied on by the trial court. *People v. Nash*, 173 Ill. 2d 423, 432 (1996).

¶ 84      At trial, Lother testified that, during his questioning of defendant, defendant initially denied the allegations that he had abused C.R. Defendant did not give the oral and written statements indicating that he had abused C.R. until after he had revealed that he had been sexually abused as a child and Lother had told defendant that people who are abused sometimes abuse others because that is how they express love. Lother testified that, once he told defendant that people who are abused sometimes abuse others as an expression of love, defendant's "demeanor changed. His arms became more relaxed and he began leaning towards [Lother]." Following Lother's continued discussion of defendant's childhood abuse, defendant made his oral and written statements indicating that he had abused C.R. Such evidence thus was certainly relevant to the circumstances under which defendant made his statements. In addition, such evidence went to the credibility of those statements, as it indicates that defendant may have given his statements as a result of a feeling of comfort and understanding from Lother, rather than as a result of Henderson's use of a "loud, commanding voice."

¶ 85      Defendant contends that even if the evidence that he had been sexually abused was relevant, its probative value was substantially outweighed by its prejudicial effect, because the jury was likely to believe that because defendant was sexually abused as a child, he was more likely to have abused C.R. Even where evidence is relevant, that evidence still may be excluded on the basis that its prejudicial effect substantially outweighs its probative value. *People v. Hoerer*, 375 Ill. App. 3d 148, 157 (2007). "It is the function of the trial court to weigh the probative value and prejudicial effect of evidence in determining whether it should be admitted," and the trial court's decision will not be overturned absent a clear abuse of discretion. *Gonzalez*, 142 Ill. 2d at 489-90. We determine that the trial court did not abuse its discretion.

¶ 86      The record demonstrates that during the presentation of the evidence that defendant had been sexually abused, the trial court took care to ensure that the evidence was presented in the limited context of the interrogation of defendant by the police. The trial court also allowed Lother to testify only as to what he specifically said to defendant during the interrogation, keeping out any testimony by Lother about whether he knew that people who had been abused as children actually were more likely to become abusers as adults. Although

the State, during its rebuttal argument, twice argued that defendant's childhood abuse caused him to abuse C.R., defendant objected and the trial court quickly sustained those objections. In delivering the jury instructions, the trial court instructed the jury to disregard matters to which objections were sustained and that closing arguments were not evidence. We also note that no other evidence was presented that would allow the jury to reach the conclusion that defendant was more likely to abuse children because he had been abused as a child, and the trial court instructed the jury to base its decision only on the evidence presented at trial. Further, just as defendant argues that the jury may have been prejudiced against him because he was sexually abused as a child, so too could the jury have felt deep sympathy for him as a child victim.

¶ 87     We conclude that the trial court did not abuse its discretion in admitting the evidence that defendant had been sexually abused as a child, because any prejudicial effects the evidence may have had were minimized by the very limited context in which the trial court allowed the evidence. Thus, the prejudicial effects of the evidence did not substantially outweigh its highly probative value on the issue of the credibility of defendant's confession.

¶ 88                                      F. Sentencing

¶ 89     Defendant finally argues that the trial court abused its discretion in sentencing him to 24 years' imprisonment, because the trial court failed to adequately consider numerous mitigating factors and considered some mitigating factors as aggravating factors.

¶ 90     The sentence imposed by a trial court is entitled to great deference and when the sentence is within the statutory limits, it may be disturbed only where the trial court has abused its discretion. *People v. Bosley*, 233 Ill. App. 3d 132, 139 (1992). So long as the trial court " 'does not consider incompetent evidence, improper aggravating factors, or ignore pertinent mitigating factors, it has wide latitude in sentencing a defendant to any term within the statutory range prescribed for the offense.' " *Bosley*, 233 Ill. App. 3d at 139 (quoting *People v. Hernandez*, 204 Ill. App. 3d 732, 740 (1990)). The trial court has no obligation to recite and assign value to each factor presented at a sentencing hearing. *People v. Baker*, 241 Ill. App. 3d 495, 499 (1993). Where mitigating evidence is presented to the trial court during the sentencing hearing, we may presume that the trial court considered it, absent some indication, other than the sentence itself, to the contrary. *People v. Dominguez*, 255 Ill. App. 3d 995, 1004 (1994). As the reviewing court, we are not to reweigh the factors considered in determining the defendant's sentence; nor are we to substitute our judgment for that of the trial court simply because we would have weighed the factors differently. *People v. Jones*, 376 Ill. App. 3d 372, 394 (2007).

¶ 91     Defendant contends that the trial court failed to adequately consider certain mitigating evidence in imposing his sentence. Specifically, defendant argues that the trial court did not adequately consider evidence of defendant's minimal criminal history, supportive family, steady employment, and high school graduation, all of which defendant contends demonstrated his rehabilitative potential. Defendant also argues that the trial court did not adequately consider his drug and alcohol addictions and the lack of physical injury to C.R. The record belies defendant's contentions. The trial court explicitly stated at the sentencing

hearing that it had considered the letters submitted by defendant's family in support of him and that it had reviewed defendant's criminal history, noting that it consisted of a conviction of petty theft and a conviction of burglary. The trial court also stated that it had considered the presentence investigation report. The presentence investigation report indicated defendant's minimal criminal history, the fact that he had graduated high school, his drug and alcohol use, and his steady employment history. Finally, the trial court stated that it recalled the trial evidence. The fact that C.R. did not suffer a physical injury came to light during trial. As the record demonstrates that the trial court considered all of the evidence raised by defendant on appeal, defendant's contention seems to be only that the trial court did not give enough weight to the evidence. We are not, however, permitted to disturb the sentence imposed by the trial court simply because we would weigh the evidence differently. *People v. Streit*, 142 Ill. 2d 13, 19 (1991). Moreover, although a defendant's rehabilitative potential must be taken into account, a defendant's rehabilitative potential does not outweigh other factors warranting a severe sentence, including the seriousness of the offense. *Baker*, 241 Ill. App. 3d at 499.

¶ 92     Defendant also argues that the trial court improperly considered his remorse and the fact that he was sexually abused as a child as factors in aggravation. In so arguing, defendant relies on the following comments by the trial court during the sentencing hearing:

"I look at this case and in trying to get an understanding of you, Mr. Cordova, you as the person, I find it interesting that someone with your background, a person who tells us the story about how you were sexually abused in a number of foster homes at the hands of a number of foster parents, that having that as a backdrop or in your background that that would put you in a situation where you find yourself today being found and convicted of having sexually abused a young child. You told the law enforcement officers when you gave them the statement that you felt bad about having done what you told them you had done in this particular case, placing your penis on the lips of a child and placing your hand on a child's vagina, a very young child. Your statement to them about how bad you felt this Court can only imagine how this young child felt when you were doing the things that you did to this child."

The trial court also stated:

"I read the fact that the young victim in this case has been involved in counseling and it's pretty clear that this traumatic experience warrants that. Mr. Cordova, it's you that put this in motion. You are the one that has subjected this young child to this treatment–requiring counseling rather. And again it just escapes this Court as to why somebody with your experiences of your own would put this young child through this incident here."

¶ 93     We cannot agree that these statements by the trial court indicate that it considered defendant's remorse and childhood abuse as aggravating factors. Rather, the statement regarding defendant's remorse indicates that the trial court considered defendant's remorse but afforded it little weight when balanced against the seriousness of the offense and the psychological harm done to C.R. as a result. See *People v. Leggans*, 253 Ill. App. 3d 724, 737 (1993) (psychological harm done to a child as a result of sexual abuse is properly

considered as an aggravating factor); *People v. Pavlovskis*, 229 Ill. App. 3d 776, 782 (1992) (same). Similarly, the trial court's comments on defendant's childhood abuse were made in the context of evaluating the seriousness of the offense and the psychological harm done to C.R. as a result. The trial court's comments indicate that it believed defendant should understand the seriousness of the offense and the harm that results from sexual abuse, given that defendant himself suffered such abuse. *Cf. Baker*, 241 Ill. App. 3d at 498 (agreeing with the trial court that the defendant, who suffered sexual abuse as a child, should have been aware of the psychological trauma that results from such abuse). Nothing, however, indicates that the trial court believed that defendant should receive a greater sentence because he was abused as a child.

¶ 94    Accordingly, we determine that the trial court did not abuse its discretion in sentencing defendant to 24 years' imprisonment.

¶ 95                                    III. Conclusion

¶ 96    For the foregoing reasons, the judgment of the circuit court of Lake County is affirmed.

¶ 97    Affirmed.