THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. ROBERTO DOMINGUEZ, Defendant-Appellant.

Second District   No. 2—92—0429

Opinion filed January 7, 1994.

G. Joseph Weller and Thomas A. Lilien, both of State Appellate Defender's Office, of Elgin, for appellant.

Michael J. Waller, State's Attorney, of Waukegan (William L. Browers and Mary Beth Burns, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE McLAREN delivered the opinion of the court:

Defendant, Roberto Dominguez, pleaded guilty to aggravated battery (Ill. Rev. Stat. 1991, ch. 38, par. 12—4(a) (now 720 ILCS 5/12—4(a) (West 1992))). The court sentenced him to an extended term of 10 years' imprisonment. The court found two of the factors justifying an extended-term sentence to be applicable. The court found that the offense was accomplished by means of "exceptionally brutal and heinous behavior indicative of wanton cruelty" (see Ill. Rev. Stat. 1991, ch. 38, par. 1005—5—3.2(b)(2) (now 730 ILCS 5/5—5—3.2(b)(2) (West 1992))) and that defendant committed the battery "as part of a ceremony, rite *** practice or activity" of a "religious, fraternal, or social group" (Ill. Rev. Stat. 1991, ch. 38, par. 1005—5—3.2(b)(6) (now 730 ILCS 5/5—5—3.2(b)(6) (West 1992))). Defendant appeals, contending that (1) section 5—5—3.2(b)(2) is unconstitutionally vague and overly broad; (2) section 5—5—3.2(b)(6) is unconstitutional since it denies the existence of consent of the victim as a defense or mitigating factor; (3) that even if the sentencing provisions are constitutional, the court abused its discretion in imposing the maximum extended-term sentence; and (4) defendant is entitled to receive credit against his sentence for two additional days spent in custody prior to sentencing.

The State presented the following factual basis for the plea. Keith Smith would testify that on August 15, 1991, he was a member of the Latin Lovers street gang in Waukegan. Smith wanted to leave the gang, but was informed that he would first have to undergo a "violation" in which he would be beaten head to toe for three minutes by three other gang members.

Smith's doctor would have testified that Smith was in a coma for several months following the beating and suffered permanent brain damage. Smith had no recollection of events at the park where he was beaten.

Waukegan police detective Yarc would testify that defendant admitted to being one of the people who beat Smith on August 15. Felipe Diaz would testify that defendant, Carlos Cortez, Francisco Aguirre and Victor Morales entered the park with Smith after discussing the "violation" with him. Diaz later saw the badly beaten Smith in the park.

Defense counsel, as well as defendant himself, agreed that defendant had caused great bodily harm to Smith without authority. Defense counsel refused to stipulate to Diaz's proposed testimony, contending Diaz was the gang chief and had ordered the beating. The court accepted defendant's guilty plea as being knowing and voluntary.

We note that Aguirre and Morales were found guilty following a jury trial of the same offense. Morales received a 4½-year sentence and Aguirre was sentenced to a 10-year term. This court recently affirmed their convictions and sentences. (*People v. Morales* (1993), 251 Ill. App. 3d 1001.) Cortez was never apprehended.

Following the acceptance of the plea, the court ordered the preparation of a presentence report. On January 9, the court sentenced defendant to 10 years' imprisonment, the maximum extended-term sentence for this offense. The court found both that the offense was committed in a brutal and heinous manner indicative of wanton cruelty and that the offense occurred as part of a gang activity. The court denied defendant's motion to withdraw his guilty plea and defendant perfected this appeal.

■ Defendant's first contention is that section 5—5—3.2(b)(2), providing for an extended-term sentence where an offense is committed in an extremely brutal and heinous manner, is unconstitutionally vague and overly broad. Defendant contends that the phrase "exceptionally brutal and heinous behavior indicative of wanton cruelty" does not provide the sentencing court with any meaningful guidance concerning when an extended term may be imposed and therefore permits arbitrary and discriminatory application. Defendant relies on a line of Supreme Court cases holding that similar phrases failed to provide sentencing juries in capital cases with sufficient guidance in determining when the death penalty may be imposed. See *Maynard v. Cartwright* (1988), 486 U.S. 356, 100 L. Ed. 2d 372, 108 S. Ct. 1853.

Defendant's argument is fatally flawed for several reasons. Initially, courts of this State have repeatedly rejected similar constitutional challenges to section 5—5—3.2(b)(2) and related provisions. In *People v. La Pointe* (1981), 88 Ill. 2d 482, the supreme court affirmed the validity of section 5—5—3.1 of the Unified Code of Corrections (Ill. Rev. Stat. 1991, ch. 38, par. 1005—5—3.1 (now 730 ILCS 5/5—5—

3.1 (West 1992))), which provides for a sentence of natural-life imprisonment for murder based on the identical aggravating factor at issue here.

In *People v. Andrews* (1989), 132 Ill. 2d 451, the court, relying on *La Pointe*, found section 5—5—3.2(b)(2) constitutional. The court noted that the extended-term sentencing provisions were not intended to convert every offense into an extraordinary offense subject to an extended-term sentence, noting that all murders are brutal and heinous to a certain degree. The court noted, however, that the statute requires that the offense be "exceptionally" brutal and heinous. (*Andrews*, 132 Ill. 2d at 466.) This court has similarly rejected constitutional challenges to section 5—5—3.2(b)(2) nearly identical to that made here. (*People v. Hernandez* (1990), 204 Ill. App. 3d 732, 744; *People v. Brown* (1990), 195 Ill. App. 3d 78, 91; see also *People v. Holman* (1993), 250 Ill. App. 3d 503; *People v. Barnhill* (1989), 188 Ill. App. 3d 299.) Most recently, we rejected a similar argument advanced by the codefendants in their separate appeal. (*Morales*, 251 Ill. App. 3d at 1016.) Defendant provides no compelling basis to overrule these precedents.

The Supreme Court cases which have found similar phrases unconstitutionally vague were all capital cases in which eligibility for death was to be determined by a jury. The Supreme Court has held that "the penalty of death is qualitatively different from a sentence of imprisonment, however long," and there is therefore a corresponding need for reliability in the determination that death is the appropriate punishment in a particular case. (*Woodson v. North Carolina* (1976), 428 U.S. 280, 305, 49 L. Ed. 2d 944, 961, 96 S. Ct. 2978, 2991.) Capital cases are analyzed under the eighth amendment's prohibition of cruel and unusual punishment. (U.S. Const., amend. VIII; *Maynard*, 486 U.S. at 361-62, 100 L. Ed. 2d at 380, 108 S. Ct. at 1858.) Under that analysis, the term "especially heinous, atrocious, or cruel" failed to provide the jury with sufficient guidance. *Maynard*, 486 U.S. at 363-64, 100 L. Ed. 2d at 382, 108 S. Ct. at 1859; see also *Godfrey v. Georgia* (1980), 446 U.S. 420, 428, 64 L. Ed. 2d 398, 406, 100 S. Ct. 1759, 1765 (phrase "outrageously or wantonly vile, horrible and inhuman" did not provide sentencing jury with adequate guidance).

However, in *Walton v. Arizona* (1990), 497 U.S. 639, 111 L. Ed. 2d 511, 110 S. Ct. 3047, the Court held that the "heinous, cruel or depraved" aggravating factor in Arizona's capital sentencing statute provided the sentencing *judge* with adequate guidance in light of the limiting construction which the Arizona Supreme Court had previ-

ously given that statute. *Walton,* 497 U.S. at 655, 111 L. Ed. 2d at 529, 110 S. Ct. at 3057-58.

Thus, even in a capital sentencing context, the Court has held that a phrase similar to the one at issue provides adequate guidance where the sentencer is a judge. Defendant correctly points out that the Court also acknowledged the limiting construction of the phrase provided by the State supreme court and argues that such a limiting construction is lacking in Illinois. Defendant acknowledges that the Illinois Supreme Court "purportedly" provided such a limiting construction in *Andrews,* but contends that "such apparently has not proved the case."

Defendant again fails to perceive the fundamental difference between capital cases and all other cases. Whereas capital cases are analyzed pursuant to the eighth amendment, noncapital cases are analyzed under the due process clause. (*Maynard,* 486 U.S. at 361-62, 100 L. Ed. 2d at 380, 108 S. Ct. at 1857-58; *Barnhill,* 188 Ill. App. 3d at 308-10.) A due process clause vagueness challenge, unlike an eighth amendment challenge, is decided on an "as-applied" basis. (*Barnhill,* 188 Ill. App. 3d at 310.) Therefore, such a challenge may be overcome in any given case where the defendant's conduct clearly falls within the statutory definition. *Maynard,* 486 U.S. at 361, 100 L. Ed. 2d at 380, 108 S. Ct. at 1857.

This distinction is critical and fatal to defendant's argument. The record in this case and in *Morales,* of which we take judicial notice, demonstrates that the victim was literally beaten senseless by defendant and three companions. The "violators" continued to beat the victim after he appeared to be dead. (*Morales,* 251 Ill. App. 3d at 1008.) As a result of the beating, the victim remained in a coma for 58 days and suffered permanent brain damage. Smith was unarmed and in no way threatened defendant or otherwise provoked the beating. Defendant cannot seriously contend that the beating administered to Smith was not "extremely brutal and heinous, indicative of wanton cruelty."

A statute enjoys a strong presumption of constitutionality, and the burden of showing invalidity is on the party challenging the act. A statute is unconstitutionally vague if its terms are so ill defined that their meaning will ultimately be determined by the opinions and whims of the trier of fact rather than on any objective criteria. A court will assume that, absent a contrary legislative intention, the words used in a statute have their ordinary and popularly understood meanings. *People v. La Pointe* (1981), 88 Ill. 2d 482, 499.

*La Pointe* noted that Webster's Third New International Dictionary defined "[h]einous" as " 'hatefully or shockingly evil: grossly bad:

enormously and flagrantly criminal' " and "brutal" as " 'grossly ruthless,' 'devoid of mercy or compassion: cruel and cold-blooded.' " (*La Pointe*, 88 Ill. 2d at 501, quoting Webster's Third New International Dictionary 1050, 286 (1986).) Since defendant's conduct clearly falls within the plain and ordinary meaning of the statutory language, he may not avail himself of the argument that the phrase might be unconstitutionally vague when applied to some hypothetical future situation.

■ Defendant next contends that section 5—5—3.2(b)(6), providing for an extended-term sentence where certain specified offenses are committed as part of a ritual or ceremony, is unconstitutional. He contends that the statute is invalid because it fails to provide for the consent of the victim as a defense or a factor in mitigation. Defendant concedes that the victim could not be held to have consented to the nature and extent of the beating administered by his erstwhile companions and thus consent cannot be a complete defense. He maintains, however, that the court should have been allowed to consider the victim's consent to the "violation" as a factor in mitigation.

Like the State, we are troubled by defendant's argument. We fail to see any mitigating value in the fact that the victim failed to resist actively the proffered beating.

The record, moreover, fails to demonstrate meaningful "consent" by the victim. Although defendant fails to cite to any portion of the record in this case which supports his theory that the victim consented to being beaten, he apparently refers to certain testimony introduced in *Morales*.

Jose Olivero testified in *Morales* that Aguirre told Smith he would have to undergo a violation to withdraw from the gang. Smith testified that he wanted it to be one-on-one, but Aguirre said that he would have to fight three men for three minutes. Smith stated that he did not want it done that night, but Aguirre said that he could "get it now" or "whenever they see him." (*Morales*, 251 Ill. App. 3d at 1007.) Smith further stated that he "agreed" to take his violation, although he did not want to do so at any time. (*Morales*, 251 Ill. App. 3d at 1007.) Such an attitude represents acceptance of the inevitable, not consent.

Defendant further argues, however, that Smith implicitly consented by joining the gang and therefore agreeing to be bound by its rules. This argument is meritless. There is no evidence that Smith was even aware of this rule when he joined the gang. Indeed, there was testimony in *Morales* that the rule was not implemented until a month prior to August 15. Moreover, it appears that one purpose of

section 5—5—3.2(b)(6) is to deter gang activity. We find no intention in the statute to distinguish between mayhem committed on members of one's own gang as opposed to rival gang members or the public generally. It is absurd to suggest that gang members may violate any criminal statute against members of the same gang with impunity merely by instituting a gang "rule." Thus, assuming *arguendo* that we are constitutionally required to accept consent as a mitigating factor in sentencing, a point for which defendant cites no authority, defendant could not avail himself of this mandate where no valid consent has been shown.

In *Morales*, we rejected a similar argument. We held that the element of consent could be introduced as a mitigating factor pursuant to section 5—5—3.1(a)(4) (Ill. Rev. Stat. 1991, ch. 38, par. 1005—5—3.1(a)(4) (now 730 ILCS 5/5—5—3.1(a)(4) (West 1992))). (*Morales*, 251 Ill. App. 3d at 1017.) We further determined, however, that no evidence in the record demonstrated the consent of the victim and defendants therefore could not rely on this factor. *Morales*, 251 Ill. App. 3d at 1018.

■ Defendant's third contention is that, even if the two statutory aggravating circumstances in question are constitutionally valid, the trial court abused its discretion in sentencing defendant to the maximum extended term of 10 years. This argument actually contains two related subpoints. Defendant contends that his sentence is disproportionate to the identical sentence received by Aguirre where Aguirre supposedly played a greater role in the offense. Defendant also contends that the court failed to give appropriate weight to certain mitigating evidence.

A trial judge's sentencing decision is entitled to great deference and weight. (*People v. Perruquet* (1977), 68 Ill. 2d 149, 154.) Even though a reviewing court might have weighed the sentencing factors differently, its power to alter or reduce a sentence is limited to those cases in which the trial court has abused its discretion. *People v. Keating* (1993), 252 Ill. App. 3d 801, 803.

In general, similarly situated defendants should not receive grossly disparate sentences. (*People v. Bergman* (1984), 121 Ill. App. 3d 100, 105; *People v. Cook* (1983), 112 Ill. App. 3d 621, 623.) However, the mere fact that one defendant receives a substantially longer sentence than a codefendant is not, by itself, a violation of fundamental fairness. (*Bergman*, 121 Ill. App. 3d at 105.) A disparity in sentencing can be justified by the degree of participation in the offense or differences in the defendants' criminal records. *People v. Franklin* (1987), 159 Ill. App. 3d 923, 934.

Defendant argues that Aguirre ordered the beating in his capacity as gang chief and contends that Aguirre was thus more culpable. However, the record in Aguirre's case does not demonstrate that Aguirre actually participated in the beating. The trial court could rationally conclude that one who actually administered the beating was culpable to an equal or greater degree than one who supervised it but did not actively participate. Thus, the sentences were not improper on this basis.

Defendant further contends that his less extensive criminal record justifies a lighter sentence. Defendant notes that Aguirre had six previous convictions of burglary, while defendant had only a misdemeanor theft conviction and several traffic offenses.

We do not believe that the alleged disparity in defendants' criminal histories is a significant factor which justifies disturbing the trial court's sentencing decision. Both defendants had records consisting solely of nonviolent offenses. The trial court could rationally find the nature of the offense itself to be a more significant factor than defendant's relative lack of a criminal record.

The cases on which defendant relies all involved situations where a defendant received a significantly greater sentence than an equally or more culpable codefendant. In *Cook*, the defendant participated in an escape with two codefendants. Although all three participated to the same extent, defendant received a seven-year sentence, while each of his codefendants received a three-year term. This court noted that, although Cook had a criminal record spanning a longer period of time, it was less violent than those of his codefendants and was insufficient to warrant a sentence more than twice as long as those of his codefendants. We therefore exercised our power pursuant to Supreme Court Rule 615 (134 Ill. 2d R. 615) to reduce Cook's sentence to five years.

In *Cook*, we upheld the trial court's discretion to the extent that it imposed a longer term on Cook, despite the fact that his criminal record was less violent than those of his codefendants. *Cook* generally stands for the proposition that, in comparing sentences of codefendants, the degree of participation in the offense is the most important factor and relatively minor differences in defendants' records did not themselves justify disturbing the trial court's sentencing determination. We are unwilling to establish a rule whereby a trial court must invariably tally up the records of similarly culpable defendants and reward those with arguably less severe records. In this case, the differences in the criminal records of defendant and Aguirre were not so significant as to establish an abuse of discretion.

Defendant's next contention is that the court abused its discretion in imposing the maximum extended-term sentence where the court failed to give adequate weight to certain mitigating evidence. The trial court found two factors in mitigation: that defendant had little prior history of criminal activity and that the offense was induced or facilitated by others. He contends, however, that the court failed to consider or to give adequate weight to other mitigating circumstances, including the victim's voluntary submission to the gang and its practices and the implicit threat that defendant might have suffered a beating himself had he refused to participate. Defendant notes other factors which allegedly demonstrate his rehabilitative potential, including the fact that he was only 20 years old, was a high school graduate, had a relatively stable employment history, was diagnosed as an alcoholic and demonstrated remorse for his actions.

The weight to be accorded each factor in aggravation and mitigation depends on the circumstances of each case. As long as the court does not consider incompetent evidence, improper aggravating factors, or ignore pertinent mitigating factors, it has wide latitude in sentencing a defendant to any term within the statutory range prescribed for the offense. The balance to be struck among the aggravating and mitigating factors is a matter of judicial discretion which should not be disturbed on review absent an abuse of that discretion. (*People v. Hernandez* (1990), 204 Ill. App. 3d 732, 740.) Where relevant mitigating evidence is before the court, it is presumed that the court considered it absent some indication in the record to the contrary other than the sentence itself. *People v. McCain* (1993), 248 Ill. App. 3d 844, 853.

In this case, as noted previously, there was significant evidence of aggravating circumstances, particularly the nature of the offense itself. The mitigating factors which defendant points out do not mandate a reduction in his sentence.

We have already determined that the fact that the victim voluntarily joined the gang is not a significant mitigating factor. Further, there was no evidence that defendant faced any negative consequences if he refused to participate in the beating. There is no indication that defendant was an unwilling participant. Moreover, the court did consider in mitigation that the offense was "induced or facilitated" by others. It appears that the court gave adequate consideration to this factor. Similarly, the other evidence which defendant cites does not mandate a different result. The court presumably considered this evidence and found that it did not outweigh the serious-

ness of the offense. We conclude the trial court did not abuse its discretion in this regard.

■■ Finally, defendant contends that he is entitled to credit toward his sentence for two additional days spent in custody prior to his guilty plea and sentencing. The presentence report states that defendant was arrested on September 1, 1991, and that the Department of Corrections is calculating his sentence from that date. However, the arrest warrant issued for defendant shows that it was executed on August 30, 1991. Defendant must have been in custody from that date since there is no indication that he ever posted bond.

The State concedes that defendant is entitled to credit for two additional days in custody. A defendant who is in custody for any portion of a day prior to sentencing is entitled to credit toward his sentence for that day. (Ill. Rev. Stat. 1991, ch. 38, par. 1005—8—7(b) (now 730 ILCS 5/5—8—7(b) (West 1992)).) Therefore, we remand the cause to the trial court to amend the mittimus to reflect credit for two additional days spent in custody.

For the foregoing reasons, the judgment of the trial court is affirmed as modified, and the cause is remanded.

Affirmed and remanded.

GEIGER and DOYLE, JJ., concur.