NOTICE
This order was filed under Supreme
Court Rule 23 and may not be cited
as precedent by any party except in
the limited circumstances allowed
under Rule 23(e)(1).

2020 IL App (4th) 180654-U

NO. 4-18-0654

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
January 23, 2020
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | McLean County |
| ANTHONY MITCHELL, | ) | No. 15CF560 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Scott D. Drazewski, |
| | ) | Judge Presiding. |

JUSTICE HOLDER WHITE delivered the judgment of the court.
Justices DeArmond and Cavanagh concurred in the judgment.

**ORDER**

¶ 1    *Held*:   The appellate court affirmed, concluding the trial court did not abuse its discretion
           in sentencing defendant to five years' imprisonment for aggravated battery.

¶ 2        In November 2015, the trial court found defendant, Anthony Mitchell, guilty of

two counts of aggravated battery (720 ILCS 5/12-3.05(c), (f)(1) (West 2014)), both Class 3

felonies. Defendant was extended-term eligible based on his criminal history. The court found

the two counts merged and sentenced defendant to five years' imprisonment.

¶ 3        On appeal, defendant argues his sentence is excessive given his character, the

nature of the offense, and his rehabilitative potential. Specifically, defendant points to the

"*de minimis*" degree of harm his conduct caused, his steady record of employment, the support

of others who know him well, the hardship imprisonment imposes on his girlfriend and young son, and his difficult upbringing. We affirm.

¶ 4                              I. BACKGROUND

¶ 5        On April 27, 2015, the State charged defendant by information with two counts of aggravated battery (720 ILCS 5/12-3.05(c), (f)(1) (West 2014)). Count I alleged defendant knowingly caused bodily harm to William Burke by stabbing him in a public place (720 ILCS 5/12-3.05(c) (West 2014)). Count II alleged defendant knowingly caused bodily harm to Burke by using a deadly weapon, a knife (720 ILCS 5/12-3.05(f)(1) (West 2014)). On May 6, 2015, a grand jury returned indictments on both counts.

¶ 6                              A. Bench Trial

¶ 7        On November 30, 2015, defendant's case proceeded to a bench trial. We summarize only the facts and testimony necessary for purposes of this appeal.

¶ 8        William Burke testified that on April 25, 2015, he was drinking with friends at a bar called Chasers until it closed at 2 a.m. When the bar closed, Burke and his friend Steven Tyler went next door to get food at Poblano's Burritos (Poblano's). While Burke waited in line to order food, "no less than four" men entered the restaurant "and things became a bit hectic in there." Burke testified that defendant became "confrontational with a woman who was in front of [him] in line" so he "got between it and tried to separate it." When asked what happened when he attempted to stop the confrontation, Burke stated, "I was trying to separate the two parties. And the next thing I know, I'm being stabbed." He elaborated, stating, "I'm feeling a sharp blade that's being pulled from a holster into my right side of my abdomen." Burke identified defendant as the man who stabbed him, and he described the knife that defendant used (a photo of the knife was introduced into evidence and demonstrated the knife had a two-inch-long blade). Burke

stated he lost consciousness after being stabbed. When he regained consciousness, he felt blood on his shirt, was surrounded by defendant and multiple other men, and "the next thing I know, I'm being taken around the corner to the ambulance." The parties stipulated that if called as a witness, Dr. Christopher Kerwin would testify that he examined Burke at approximately 3 a.m. on April 25, 2015, and "noticed a 1-centimeter (cm) stab wound to [his] right lower quadrant."

¶ 9        Steven Tyler testified he was drinking with Burke and other friends at Chasers on April 25, 2015. When the bar closed, he and Burke went to Poblano's. Tyler went to the restroom while Burke waited in line. An individual unknown to Tyler came into the restroom and told Tyler to "come check out your friend." Tyler exited the restroom and found Burke "on the ground with three or four other people, one to the left, one on the middle and one to the right." Tyler testified that shortly after finding Burke on the ground, he "was pushed to a table" and hit in the head numerous times. Tyler stated, "I think they were off of [Burke] at that point. They were on me now." Both Tyler and Burke testified they had never seen the group of men before or been in any sort of altercation with them.

¶ 10        Defendant called his friend, Benedick Mojica, to testify. Mojica testified that on April 25, 2015, he was with defendant at a bar called Elroy's, which was located next door to Poblano's. Around 2 a.m., Mojica went to Poblano's by himself and ordered food. As he went to pay, Mojica realized he lacked funds so he returned to Elroy's to ask to borrow defendant's debit card. Mojica went back to Poblano's after getting defendant's card and waited in the back of the line. Mojica testified that defendant walked into Poblano's a few minutes later and went to the front of the line to talk to some people he knew. Mojica stated, "I was sitting in the back of the line looking at everything. And then the next thing I know there was three people on top of [defendant]." Mojica testified he went to help defendant and "became involved into the whole

thing. So I was into a fight with another person." Mojica further testified that neither he nor defendant initiated the altercation and the fight consisted of him, defendant, "and approximately three other people." As soon as they could extract themselves from the fight, defendant and Mojica fled the restaurant.

¶ 11    Defendant testified that at approximately 2 a.m. on the night in question he was standing outside of Elroy's waiting for a cab. Defendant went inside Poblano's after Mojica asked to borrow his debit card. Defendant stated he walked to the front of the line to ask the employee working the register if his friend could use his card. Someone accused defendant of "cutting in line" and "became aggressive." Defendant testified he walked away from the situation and then encountered Burke towards the end of the line. Burke told defendant "to chill out and get in the back of the line." Defendant claimed he said nothing in response to Burke. Defendant testified, "From him telling me to get in the back of the line, next thing I recall is being on the floor being attacked." Defendant stated he "was blind-sided from behind" and lost consciousness. When he regained consciousness, there were "two or three individuals on top of [him] throwing punches and kicks." Defendant testified he tried to get up twice to escape the altercation but was thrown back to the ground both times and "at that time was when I pulled my knife out and kind of waved it upward at whoever was throwing punches." Defendant further testified that he was not trying to hurt anyone with his knife; rather, he believed it was the only way he could get the three people on top of him to stop kicking and punching him in the face.

¶ 12    Following the arguments of counsel, the trial court rejected defendant's self-defense claim. The court noted that the primary issue to be resolved in the case was the credibility of the witnesses, and it described Burke's testimony "as being the most credible in

refuting the versions which were provided by the defendant." Accordingly, the trial court found, as to both counts, that the State proved defendant guilty beyond a reasonable doubt.

¶ 13                                B. Sentencing Hearing

¶ 14          On February 26, 2016, the trial court conducted a sentencing hearing. (We note defendant was also sentenced at this hearing in McLean County case No. 15-CF-862. In that case, defendant was charged with aggravated battery and resisting a peace officer while out on bond in the instant case. Defendant pleaded guilty to aggravated battery (720 ILCS 5/12-3.05(c) (West 2014)) on February 10, 2016, in exchange for dismissal of the resisting a peace officer charge.)

¶ 15          The presentence investigation report (PSI) reflected defendant's prior convictions—3 felonies, 3 misdemeanors, 12 traffic violations, and 2 ordinance violations. Defendant also had two felony charges pending at the time of the sentencing hearing. Defendant committed the offenses in the instant case while released on bond on unrelated felony charges. The PSI further indicated that defendant lived with his girlfriend of three years and their two-year-old son.

¶ 16          The State presented no evidence in aggravation. Defendant introduced two exhibits into evidence as mitigation. The first exhibit consisted of six letters of reference written on defendant's behalf. Exhibit two listed dates and locations of Alcoholics Anonymous (AA) meetings defendant attended since his arrest. Defendant also presented the testimony of three character witnesses, and he testified on his own behalf. David Boylan testified he was defendant's AA sponsor. Boylan first met defendant in May of 2015. Boylan testified defendant was doing well in AA and he believed defendant had remained sober since first attending meetings in May. Michael Bradley also testified that he knew defendant through AA. Bradley

stated defendant was attending AA meetings regularly and doing well in the program. Rick Penn testified that he owned a landscaping business and employed defendant. Defendant had worked for Penn's landscaping business for approximately two years. Penn testified that defendant was a good person and a hard worker. He denied ever seeing defendant display signs of substance abuse. Defendant testified about his AA progress and his difficult upbringing, which included his mother's substance abuse issues that led to his removal from home at the age of ten. On cross-examination, defendant admitted he still used cannabis and cocaine.

¶ 17        Following the presentation of defendant's evidence, the State argued for an extended-term sentence of eight years' imprisonment. The State maintained no factors in mitigation existed. In aggravation, the State pointed to (1) the harm defendant's conduct caused, (2) his lengthy criminal record, and (3) the commission of the instant felony while released on bond on separate felony charges. Defendant requested a four-year term of imprisonment, highlighting his difficult upbringing, his AA attendance, and the letters and testimony of his character witnesses that demonstrated his potential for rehabilitation.

¶ 18        In imposing sentence, the trial court stated it had considered the evidence presented at trial, the PSI, the letters written in support of defendant, defendant's testimony and the testimony of his character witnesses, the statutory factors in aggravation and mitigation, and the particular circumstances of the case. The court found in mitigation that, "based upon primarily the testimony that was elicited from the character witnesses," defendant was unlikely to commit further crimes. The court also found in mitigation that defendant's imprisonment would "entail excessive hardship to his dependents." In discussing the facts and circumstances of the case, the trial court stated defendant had "the capability *** of rehabilitating [himself,]" commended him for abstaining from alcohol and discussed his upbringing. In aggravation, the

- 6 -

court highlighted defendant's criminal history and the fact that he committed the instant felony while released on bond on separate felony charges. The court declined to impose an extended-term sentence as recommended by the State and instead sentenced defendant to five years' imprisonment.

¶ 19        This appeal followed.

¶ 20                                    II. ANALYSIS

¶ 21        On appeal, defendant argues his sentence is excessive given the nature of the offense for which he was convicted "viewed in conjunction with [his] character and rehabilitation potential." Specifically, defendant points to the "*de minimis*" degree of harm his conduct caused, his steady record of employment, the support of others who know him well, the hardship imprisonment has on his girlfriend and young son, and his difficult family upbringing. The State contends defendant forfeited his argument because he did not file a motion to reconsider his sentence. In his reply brief, defendant acknowledges his forfeiture and asks this court to review his excessive-sentence claim for plain error.

¶ 22        Generally, the first step in plain-error analysis is to determine whether a clear or obvious error occurred. *People v. Piatkowski*, 225 Ill. 2d 551, 565, 870 N.E.2d 403, 411 (2007). Thus, we will examine whether the trial court committed clear or obvious error in sentencing defendant to five years' imprisonment for aggravated battery (720 ILCS 5/12-3.05(f)(1) (West 2014)).

¶ 23        In crafting an appropriate sentence, a trial court must balance "the retributive and rehabilitative purposes of punishment ***." *People v. Daly*, 2014 IL App (4th) 140624, ¶ 26, 21 N.E.3d 810. This "process requires careful consideration of all factors in aggravation and mitigation." *Id.* "Because of the trial court's opportunity to assess a defendant's credibility,

- 7 -

demeanor, general moral character, mentality, social environment, habits, and age, deference is afforded its sentencing judgment." *Id.* "As long as the court does not consider incompetent evidence, improper aggravating factors, or ignore pertinent mitigating factors, it has wide latitude in sentencing a defendant to any term within the statutory range prescribed for the offense." *People v. Dominguez*, 255 Ill. App. 3d 995, 1004, 626 N.E.2d 775, 782 (1994). A reviewing court "must not substitute its judgment for that of the trial court merely because it would have weighed [the] factors differently." *People v. Stacey*, 193 Ill. 2d 203, 209, 737 N.E.2d 626, 629 (2000). Rather, we review the trial court's sentence for an abuse of discretion, which occurs "where the sentence is greatly at variance with the spirit and purpose of the law, or manifestly disproportionate to the nature of the offense." *Id.* at 209-10.

¶ 24       We find defendant's sentence is not "greatly at variance with the spirit and purpose of the law, or manifestly disproportionate to the nature of the offense." *Id.* at 210. Defendant makes no argument that the trial court relied on an improper aggravating factor, and his sentence is within the statutory range prescribed for the offense. He was convicted of a Class 3 felony (720 ILCS 5/12-3.05(h) (West 2014)), which carries with it a sentencing range of two to five years' imprisonment (730 ILCS 5/5-4.5-40(a) (West 2014)). However, based on his criminal history, defendant was extended-term eligible. Thus, he faced a maximum sentence of ten years' imprisonment (730 ILCS 5/5-5-3.2(b)(1) (West 2014)). Ultimately, the trial court imposed a sentence three years above the minimum sentence permissible by statute and five years below the maximum.

¶ 25       The record reveals the trial court carefully considered all of the factors in aggravation and mitigation, including the specific mitigating factors defendant highlights on appeal. The court stated it had considered the evidence presented at trial, the PSI, the letters

written in support of defendant, defendant's testimony and the testimony of his character witnesses, the statutory factors in aggravation and mitigation, and the particular circumstances of the case. The court specifically found in mitigation (1) that, "based upon primarily the testimony that was elicited from the character witnesses," there was evidence he was unlikely to commit future crimes and (2) his imprisonment would cause excessive hardship to his dependents. In addressing the specific circumstances of the case, the trial court stated defendant had "the capability *** of rehabilitating [himself,]" commended him for abstaining from alcohol, and discussed his upbringing. Based on this mitigating evidence, the trial court declined to impose an extended-term sentence. However, the court also noted defendant's extensive criminal history and the fact that he committed the instant felony while released on bond on felony charges in a separate case. Even assuming we would have accorded the mitigating factors more weight than the trial court, we are prohibited from reweighing the factors on appeal. See *id.* at 209. Because the trial court carefully considered all of the factors in aggravation and mitigation, and therefore balanced "the retributive and rehabilitative purposes of punishment," defendant's sentence is not greatly at variance with the spirit and purpose of the law.

¶ 26       Moreover, we reject defendant's contention that his sentence is manifestly disproportionate to the nature of the offense, which he describes as a "mutual combat encounter" that led to a mere one-centimeter stab wound. While it is true defendant could have caused far greater harm than a one-centimeter stab wound, the offense is serious nonetheless. The fact remains that defendant stabbed an individual with a knife while he was waiting in line to order food at a restaurant. Additionally, defendant's characterization of the offense as a "mutual combat encounter" is not supported by the record. The trial court specifically rejected defendant's version of the events and found Burke's testimony more credible. Burke testified

that he attempted to separate a confrontation between defendant and a third party, "[a]nd the next thing I know, I'm being stabbed." Burke also lost consciousness after being stabbed, and there is no evidence, aside from defendant's testimony, that he was ever engaged in "mutual combat" with defendant. We find the sentence imposed on defendant was not "greatly at variance with the spirit and purpose of the law, or manifestly disproportionate to the nature of the offense." *Id.* at 210. Accordingly, defendant fails to demonstrate a clear or obvious error to support his contention of plain error.

¶ 27                                    III. CONCLUSION

¶ 28            For the reasons stated, we affirm the trial court's judgment.

¶ 29            Affirmed.