NOTICE

Decision filed 11/12/24. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2024 IL App (5th) 230047-U

NO. 5-23-0047

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE

This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Christian County. |
| | ) | |
| v. | ) | No. 21-CF-100 |
| | ) | |
| JACOB R. MARIACHER, | ) | Honorable |
| | ) | Bradley T. Paisley, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE CATES delivered the judgment of the court.
Justices Welch and Moore concurred in the judgment.

**ORDER**

¶ 1    *Held*: The circuit court did not err in its application of aggravating and mitigating factors when sentencing the defendant for aggravated battery with a firearm. The circuit court's sentencing decision was within the statutory sentencing range and not an abuse of discretion.

¶ 2    The defendant, Jacob R. Mariacher, pled guilty to aggravated battery with a firearm (720 ILCS 5/12-3.05(e)(1) (West 2022)) and was subsequently sentenced to 20 years in the Illinois Department of Corrections (IDOC) with 3 years of mandatory supervised release (MSR). On appeal, the defendant argues that the circuit court erred when considering the use of a firearm in aggravation where the use of a firearm was inherent in the offense; the circuit court erred in failing to consider strong provocation as a mitigating factor based on an unspecified statement from a police report made by the defendant's girlfriend; and the circuit court's sentencing decision was

1

excessive where it failed to account for multiple mitigating factors. For the following reasons, we affirm the circuit court of Christian County.

¶ 3                                              I. BACKGROUND

¶ 4     On March 14, 2021, the defendant fired a gun at the face of his 17-year-old roommate, A.T. The bullet travelled through A.T.'s cheek. He lost several teeth and underwent several surgeries but survived the incident.

¶ 5     The defendant was charged by information with aggravated battery with a firearm (720 ILCS 5/12-3.05(e)(1) (West 2020)), aggravated discharge of a firearm (720 ILCS 5/24-1.2 (West 2020)), unlawful possession of a weapon by a felon (720 ILCS 5/24-1.1(a) (West 2020)), and possession of a stolen firearm (720 ILCS 5/24-3.8(a) (West 2020)).

¶ 6     On April 8, 2022, the defendant entered a plea of guilty to the count of aggravated battery with a firearm. The defendant received admonishments and was informed that the punishment for that offense was a determinate sentence of incarceration of not less than 6 years and not more than 30 years in the IDOC, and/or a fine not to exceed $25,000, and a 3-year term of MSR. The circuit court found that the defendant knowingly and voluntarily entered into the plea agreement, understood his legal rights, and understood the penalties in the case. The remaining charges were dismissed.

¶ 7     During the hearing on the plea agreement, the State provided a factual basis for the aggravated battery with a firearm conviction. The State asserted that an investigating officer would testify to the conversation with the minor victim, A.T., after he was taken to the hospital. A.T. had indicated that the defendant lived with A.T.'s family. On March 14, 2021, A.T. rode his bicycle to find the defendant. The defendant was a passenger in the car driven by C.A., the defendant's girlfriend. As A.T. approached the car, the defendant pulled out a gun and shot A.T. in the face.

2

A.T. was taken to the hospital for the injuries sustained to his face and A.T. lost teeth. The officers additionally interviewed C.A., who provided a statement that was consistent with A.T.'s version of events.

¶ 8 The defendant was carrying a Glock pistol when he was taken into custody. The passenger side of C.A.'s vehicle was tested for gun powder residue. Gun powder residue was found inside the vehicle by the passenger window. The defendant had also called his mother from the Christian County Sheriff's office and told her that he shot A.T. The defense stipulated that if the case were to proceed to trial, the State would be able to produce evidence as described. The circuit court found that there was a factual basis to support the defendant's guilty plea.

¶ 9 The circuit court held a sentencing hearing on May 26, 2022. A presentence investigation and report (PSI) was submitted. The PSI included multiple police reports, and those reports included narratives from A.T., Ashley Nation,[1] C.A., and the defendant. Although C.A. did not testify at the hearing, the circuit court reviewed the PSI and considered her narrative. According to the police interview of C.A., three to five days before the incident, the defendant caught A.T. taking photographs of the defendant's debit card or credit card which caused the defendant to move from A.T.'s house. C.A. informed the police officer that on March 14, 2021, she was driving her car, and the defendant was a passenger. C.A. had approached a stop sign and A.T. appeared on a bicycle. A.T. dropped the bicycle in front of her car, impeding its movement. A.T. then walked over to the defendant's side of the car and the defendant pulled out a gun and pointed the gun towards A.T. No words were exchanged. Then, she heard a gunshot and saw that A.T. had grabbed his face and had fallen to the ground. The defendant told C.A. to drive, and she drove over A.T.'s bicycle.

---

[1]Ashley Nation is A.T.'s adoptive mother.

¶ 10    The State presented evidence in aggravation, including the testimony of A.T. and his adoptive mother. A.T. testified that he was 17 years old in March of 2021. At that time, he lived with his adoptive mother, brother, and the defendant. A.T. had known the defendant for his entire life, as they lived near each other in the suburbs of Chicago. A.T. and the defendant stole cars together in Sullivan, Illinois. The defendant became homeless and A.T. invited him to live with his adoptive family who had moved to Pana, Illinois. The defendant moved in with A.T. and they shared a bedroom. A.T. testified that after the defendant found a girlfriend, he began to act "weird, like he didn't want to really talk much and it seemed like he just had something against me."

¶ 11    A.T. testified that in the morning of March 14, 2021, he noticed that belongings were missing from his room, and the defendant's bed had been stripped of sheets. A.T. searched for the defendant and rode his bike to the defendant's girlfriend's house. A.T. found the defendant riding in his girlfriend's vehicle. A.T. dropped his bike in front of the defendant's girlfriend's car and walked around the vehicle towards the passenger door to speak to the defendant. The defendant then raised his gun. A.T. testified that the defendant was his best friend, and he "didn't think that he would shoot me." A.T. was approximately three feet from the car and testified that instead of walking away he used his right hand and "reached for the gun to smack it out of the way." The defendant, however, fired the gun before A.T. could reach it or say anything to the defendant.

¶ 12    After the gun discharged, A.T. grabbed his face and immediately noticed that he was bleeding. A.T. then dropped to the ground to avoid being shot again. The defendant left, and A.T. attempted to crawl for help. He realized that he was able to walk and headed to a nearby house for assistance. The police were called and A.T. was taken to a hospital in Springfield, Illinois. A.T. had surgery on his fractured jaw and his jaw was wired shut. The bullet had entered the front of his face under his nose and exited the left side of his mouth. Three or four teeth were missing due

4

to the gunshot. A.T. continued to have issues with fully opening his mouth and with eating. The injury remained painful.

¶ 13    A.T. additionally testified that he was aware that the defendant had a gun prior to the incident. The defendant found the gun when he was "car hopping." A.T. described "car hopping" as rummaging empty or unlocked cars for items. A.T. did not give an opinion on a sentence length for the defendant and stated that he wanted the judge to decide.

¶ 14    Ashley Nation, A.T.'s adoptive mother, testified that she adopted A.T. in July of 2018. When Nation was in the process of adopting A.T., she knew that A.T. was friends with the defendant. Nation was aware that the defendant was homeless, and A.T. had asked if the defendant could move in with their family. Nation initially refused but decided to pay for a bus ticket for the defendant to move from the Chicago area into her house.

¶ 15    Approximately two months prior to the incident, Nation had noticed that the defendant's behavior had changed, and she had sought advice on how to remove the defendant from her home. Nation described him as "weird" and "overly nice, almost a fake nice." The defendant had never fought with A.T. before the incident.

¶ 16    Nation was sleeping when she received a call that A.T. was on the way to a hospital because he had been shot. A.T. required five surgeries, his jaw was wired shut for six weeks, and his head was immobilized. Nation testified to how she felt and stated that "to use the word shocked is not— I don't have words for how this blew me away."

¶ 17    Nation testified that she confronted the defendant about rules for the house before he moved in but had never threatened the defendant. Additionally, they did not have firearms in the house. Nation did not want to see the defendant in prison for the rest of his life but wanted him

there for "a good part of it." The defendant had shown no remorse and had tried to take her child's life.

¶ 18    The defense submitted character reference letters from the defendant's mother, maternal grandmother, stepfather, aunt, and two friends as evidence in mitigation. No testimony was presented by the defense.

¶ 19    The State argued factors in aggravation. The defendant's conduct had caused or threatened serious harm where the victim was shot in the face and required multiple surgeries and continued to have issues with his mouth. The defendant had a history of prior delinquency or criminal activity as the PSI contained a felony conviction for possession of a stolen vehicle, and this incident occurred while the defendant was serving probation for that offense. The PSI additionally included a note from the Illinois State Police report with a transcription of a conversation between the defendant and his mother where the defendant indicated that he had shot A.T. in the face. The defendant additionally had said that he hoped that A.T. was not okay because "he was trying to steal [the defendant's] social and all of that s***." The State further argued that a sentence was necessary to deter others from committing the same crime and recommended a 28-year sentence in the IDOC served at 85% with a 3-year MSR.

¶ 20    The defense argued that a shooting was a serious matter and understood that imprisonment was necessary to deter others. The defendant, however, had a difficult upbringing, had received special education, and was diagnosed with ADHD. This one incident was out of character for the defendant and the defendant was shocked by what he had done. The defendant also had a history of using controlled substances and had taken Xanax on the day of the incident. The defense argued that the defendant had a minimal criminal history and the defendant's character references stated that the defendant had positive qualities.

¶ 21 The defense further argued that the defendant had acted under strong provocation where A.T. had thrown his bike in front of the car to prevent the defendant from leaving, then approached the passenger side window, and A.T. grabbed for the gun, which may have caused the defendant to pull the trigger. Defense counsel further argued,

> "all we know is that [A.T.] was shot and that [the defendant] pulled the trigger, but there was a lot of aggression on the other side here. Had there not been the aggression and the provocation, there may not have been a bullet that came out of the gun that day."

The defense requested a nine-year sentence in the IDOC served at 85%.

¶ 22 The defendant made a statement in allocution and apologized to A.T. and his family for the trauma that he had caused. He wished that he would have spoken to A.T. instead of "letting [his] impulsive actions take over that day."

¶ 23 The circuit court considered the PSI, evidence that was presented during the sentencing hearing, and arguments by counsel. Additionally, the circuit court acknowledged the defendant's statement in allocution where the defendant had wished that he could go back in time and not pull the trigger. The circuit court found that the defendant was not eligible for impact incarceration. While considering rehabilitation for the defendant, the circuit court additionally considered that it needed to protect the public and deter others from committing crimes with guns.

¶ 24 The circuit court addressed the factors in aggravation raised by the State prior to addressing the factors in mitigation. The defendant's conduct caused serious harm and threatened serious harm. A.T. suffered significant injuries and was left with permanent disfigurement and continued to suffer pain. The defendant had a prior conviction for a serious felony, but did not have a long criminal history. A sentence was necessary to deter others from committing the same crime. The circuit court specifically noted that a sentence was necessary to deter gun violence in their community and made the following statements:

7

"The other factor that the Court finds relevant is A7 which is the sentence is necessary to deter others from committing the same crime. Every time I've sentenced anybody whether it's for, you know, a driving offense to a shooting offense or a murder case, this factor always applies, right, because no—in determining an appropriate sentence, I have to consider [the defendant] and I have to consider the facts of this particular case and [the defendant] as a person and all of his history and character and everything else, but it's not limited to that.

I also have to consider the community and the public and anytime I impose a sentence I hope that it deters other people from committing similar types of crimes that—I guess I would say the level of aggravation of that factor probably increases with the seriousness of the offense.

Obviously I want to impose a sentence in this case that not only punishes the Defendant, but also I want obviously a message sent to the community—we're not a community that has a lot of gun violence. We've had more in the last five years than we probably had, you know—it's getting a little worse, but we're not Chicago.

We don't have routine gun violence in this community, and obviously we don't want there to be gun violence in the community. So, part of the sentence today is a bigger picture than just [the defendant]. It's trying to do something others hopefully will pay attention to this sentence and think twice about the use of firearms in the community to solve problems. So, I would find that that factor is significantly aggravating in this particular case."

¶ 25　The circuit court next considered that the defense only presented one factor in mitigation, strong provocation. However, the circuit court did not find the defendant's version of the events credible after considering witness testimony and after reviewing the PSI and attachments. The circuit court rejected the defendant's argument in mitigation that there was a strong provocation for his actions.

¶ 26　The circuit court considered additional factors that it found to be mitigating. The defendant had a "chaotic childhood" and issues from an early age which may explain the defendant's behavior. The defendant was also a young person when the crime was committed, and he did not have a significant criminal history. The circuit court additionally considered the cost of incarceration, but did not give that factor much weight. The circuit court then sentenced the

defendant to 20 years in the IDOC, served at 85%, followed by 3 years of MSR. The circuit court noted that the defendant would be out of prison before he was 40 years old.

¶ 27    The defendant filed a motion to reconsider his sentence and argued that his sentence was excessive. The defendant claimed that the circuit court failed to properly weigh all of the evidence when making its findings. The circuit court failed to consider certain mitigating factors, and the circuit court gave excessive weight to certain factors in aggravation. After the defendant received the transcript from the sentencing hearing, he amended his pleading to include information from the transcript as a supplement to the original motion. The defendant maintained his argument that his sentence was excessive. At the end of the motion to reconsider hearing, the circuit court took the matter under advisement.

¶ 28    The circuit court subsequently reviewed the transcript from the sentencing hearing, the PSI and attachments, and the court file. The circuit court determined that the defendant made the same arguments raised at the time of sentencing and denied the defendant's amended motion to reconsider. This appeal followed.

¶ 29                                    II. ANALYSIS

¶ 30    On appeal, the defendant argues that the circuit court erred by considering the possession and use of a firearm as aggravation even though it is inherent in the offense of aggravated battery with a firearm; the circuit court erred in failing to consider strong provocation as a mitigating factor based on a statement included in a police report; and the circuit court failed to account for multiple mitigating factors when sentencing the defendant.

¶ 31    The defendant pled guilty to aggravated battery with a firearm under section 12-3.05(e)(1) of the Criminal Code of 2012 (720 ILCS 5/12-3.05(e)(1) (West 2022)). A person commits the offense of aggravated battery with a firearm when he or she knowingly "[d]ischarges a firearm,

9

other than a machine gun or a firearm equipped with a silencer, and causes any injury to another person." 720 ILCS 5/12-3.05(e)(1) (West 2022). The defendant argues that the court considered the use of a gun as an independent factor in aggravation, acknowledges that he failed to properly preserve this issue, and seeks plain error review. The defendant argues, in the alternative, that we should review this issue as an ineffective assistance of counsel claim.

¶ 32    A claim of sentencing error is forfeited if a defendant does not contemporaneously object and file a written postsentencing motion raising the issue before the circuit court. *People v. Hillier*, 237 Ill. 2d 539, 544 (2010). However, forfeited claims may be reviewed under the plain-error doctrine which provides a narrow and limited exception. *Hillier*, 237 Ill. 2d at 545. Under the plain-error rule, a defendant must first show that a clear or obvious error occurred. *Hillier*, 237 Ill. 2d 539 at 545. "In the sentencing context, a defendant must then show either that (1) the evidence at the sentencing hearing was closely balanced, or (2) the error was so egregious as to deny the defendant a fair sentencing hearing." *Hillier*, 237 Ill. 2d at 545.

¶ 33    Generally, the circuit court may not consider a factor inherent in the offense in aggravation when sentencing. *People v. Jeffers*, 2022 IL App (2d) 210236, ¶ 25. "This rule is not meant to apply rigidly because public policy dictates that a sentence be varied in accordance with the circumstances of the offense." *People v. Sanders*, 2016 IL App (3d) 130511, ¶ 13. It is appropriate for a circuit court to consider the degree and gravity of the defendant's conduct including the threat of harm to the general public. *Jeffers*, 2022 IL App (2d) 210236, ¶¶ 25-27. " 'However, the trial court may *not* consider the end result—*i.e.*, the victim's death—as a factor in aggravation where death is implicit in the offense.' " (Emphasis in original.) *Jeffers*, 2022 IL App (2d) 210236, ¶ 25 (quoting *People v. Turner*, 2018 IL App (1st) 170204, ¶ 88). "Whether an aggravating factor is

inherent in the offense is a question of statutory construction that we review *de novo*." *Jeffers*, 2022 IL App (2d) 210236, ¶ 23.

¶ 34 One of the aggravating factors that the circuit court may consider when sentencing the defendant is whether "the sentence is necessary to deter others from committing the same crime." 730 ILCS 5/5-5-3.2(a)(7) (West 2022). When considering this aggravating factor, the circuit court explained that "[e]very time I've sentenced anybody whether it's for *** a driving offense to a shooting offense or a murder case, this factor always applies." The circuit court further explained the importance of sending the message to the community about gun violence and stated,

> "part of the sentence today is a bigger picture than just [the defendant]. It's trying to do something others hopefully will pay attention to this sentence and think twice about the use of firearms in the community to solve problems."

The circuit court did not focus on the end result of the defendant's conduct of discharging a firearm as an aggravating factor. Rather, it properly considered the importance of imposing a sentence that would deter the general public from committing the same crime.

¶ 35 As noted above, under both prongs of the plain-error doctrine, the defendant must first show a clear and obvious error occurred. *Hillier*, 237 Ill. 2d at 545. Here, no error is shown, and therefore, the procedural default will be honored. See *People v. Naylor*, 229 Ill. 2d 584, 593 (2008).

¶ 36 When determining whether a defendant was denied effective assistance of counsel, the defendant must demonstrate that counsel's performance was deficient where it fell below an objective standard of reasonableness, and the deficient performance prejudiced the defendant. *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984). Ineffective assistance of counsel during a sentencing hearing occurs when "counsel's performance was below minimal professional standards and *** a reasonable probability exists that the sentence was affected." *People v. Orange*, 168 Ill. 2d 138, 168 (1995). Both prongs of the *Strickland* test must be satisfied by the

11

defendant for a finding of ineffectiveness. *People v. Veach*, 2017 IL 120649, ¶ 30. Ineffective assistance of counsel claims are generally reviewed *de novo*. *People v. Gunn*, 2020 IL App (1st) 170542, ¶ 91. Because there was no error in sentencing on this issue, the defendant has not demonstrated that he was prejudiced by his counsel's performance.

¶ 37    We next turn to whether the circuit court failed to account for the multiple mitigating factors presented by the defense when sentencing the defendant. The defendant claims that the circuit court failed to consider strong provocation, as well as mitigating factors related to the defendant's age, history of drug use, acceptance of responsibility and expression of remorse, character evidence, family support, and the defendant's serious rehabilitative potential.

¶ 38    We first address the defendant's claim of whether that the circuit court erred in rejecting the defendant's argument that strong provocation (730 ILCS 5/5-5-3.1(a)(3) (West 2022)) applied as a mitigating factor where the circuit court considered a statement by C.A. in a police report. The defendant argues that *de novo* review applies where the circuit court considered an improper factor at sentencing. See *People v. Winchester*, 2016 IL App (4th) 140781, ¶ 72. However, "[a]s long as the court does not consider incompetent evidence, improper aggravating factors, or ignore pertinent mitigating factors, it has wide latitude in sentencing a defendant to any term within the statutory range prescribed for the offense." *People v. Dominguez*, 255 Ill. App. 3d 995, 1004 (1994). Substantial deference is given to the circuit court's sentencing decision because the sentencing judge "is in a much better position to consider factors such as the defendant's credibility, demeanor, moral character, mentality, environment, habits, and age." *People v. Snyder*, 2011 IL 111382, ¶ 36.

¶ 39    There is a presumption that the circuit court considers relevant mitigating evidence before the court. *Dominguez*, 255 Ill. App. 3d at 1004. The balancing of aggravating and mitigating factors

12

is reviewed for an abuse of discretion. *Dominguez*, 255 Ill. App. 3d at 1004. A circuit court imposing a sentence within the statutory limits will only be deemed excessive and an abuse of discretion where the sentence is "greatly at variance with the spirit and purpose of the law, or manifestly disproportionate to the nature of the offense." *People v. Stacey*, 193 Ill. 2d 203, 210 (2000). "The spirit and purpose of the law are promoted when the trial court's sentence reflects both the seriousness of the offense and gives sufficient consideration to the defendant's rehabilitative potential." *People v. Etherton*, 2017 IL App (5th) 140427, ¶ 28. Furthermore, the circuit court "has no obligation to recite and assign value to each factor presented at a sentencing hearing." *People v. Hill*, 408 Ill. App. 3d 23, 30 (2011).

¶ 40     The defendant argues that he had acted under strong provocation where the victim had thrown his bike in front of the defendant's girlfriend's car, angrily approached the defendant, and had tried to reach for the defendant's gun. On one hand, the defendant argues that circuit court erred by relying on a police report which included a statement made by C.A. which was not relevant or reliable evidence. On the other hand, the defendant argues that C.A.'s statement corroborated the defendant's claim of strong provocation, as well as A.T.'s testimony.

¶ 41     "The source and type of information that the sentencing court may consider is virtually without bounds." *People v. Rose*, 384 Ill. App. 3d 937, 941 (2008). Furthermore, the circuit court has discretion in determining whether reliable and relevant evidence is admissible during the sentencing hearing. *Rose*, 384 Ill. App. 3d at 941. To preserve the evidentiary issue on appeal, a defendant must object at trial and raise the issue in a posttrial motion. *Hillier*, 237 Ill. 2d at 544. The defendant failed to object to the admission of the police interview of C.A. and has forfeited review of whether the C.A. police interview was admissible. The defendant again argues that plain error applies, or in the alternative, counsel was ineffective.

13

¶ 42    "While 'strong provocation' is not defined in the Unified Code of Corrections, the similar term 'serious provocation' has a well-established meaning when considering whether an individual acted under serious provocation sufficient to reduce the offense of first degree murder to second degree murder, and is limited to the categories of substantial physical injury or assault, mutual quarrel or combat, illegal arrest, and spousal adultery." *People v. Powell*, 2013 IL App (1st) 111654, ¶ 36 (citing *People v. Merritte*, 242 Ill. App. 3d 485, 492 (1993)). Strong provocation as a mitigating factor at sentencing includes a wider range of conduct than serious provocation and requires direct and immediate provocation. *Powell*, 2013 IL App (1st) 111654, ¶ 36.

¶ 43    The circuit court considered the testimony of the witnesses and observed their demeanor during the sentencing hearing and the circuit court did not find the defendant's version of events to be credible. A.T. had testified that on March 14, 2021, he was searching for the defendant on his bicycle. A.T. dropped his bicycle in front of C.A.'s vehicle while the vehicle was at a stop sign. A.T. approached the passenger side of the vehicle where the defendant was sitting. The defendant pulled out a gun and immediately shot A.T. in the face before A.T. was able to "smack" the gun from the defendant or say anything to the defendant. A.T.'s bicycle had not prevented the defendant from leaving when A.T. approached because C.A. drove away after the defendant shot A.T.

¶ 44    The circuit court did not abuse its discretion in its determination that the defendant did not act in strong provocation. There was no evidence of direct and immediate provocation where A.T. had only approached his friend sitting in the passenger seat of a vehicle and was shot before he was able to speak or reach for the gun.

¶ 45    The defendant also has not demonstrated that clear and obvious error occurred. See *Hillier*, 237 Ill. 2d at 545. The procedural default will be honored where no error was shown. See *Naylor*,

14

229 Ill. 2d at 593. Additionally, the defendant has not demonstrated ineffective assistance of counsel where he was not prejudiced by his counsel's performance.

¶ 46    The defendant additionally argues that his 20-year sentence should be reduced where the circuit court failed to account for multiple mitigating factors. However, the circuit court specifically addressed additional mitigating factors and found the defendant's age and "chaotic childhood" as factors in mitigation. The defendant's history of drug use was contained in the PSI, which the circuit court considered, and the court considered the letters submitted by the defendant's family members. The circuit court acknowledged the defendant's statement of allocution where the defendant had demonstrated remorse and wished he had not pulled the trigger, as well as witness testimony. Nation had testified that the defendant was not remorseful. The circuit court considered that it had to weigh the defendant's rehabilitative potential while considering the need to protect the public and deter others from committing similar crimes. Additionally, the circuit court explicitly stated that it had considered the cost of incarceration when sentencing the defendant.

¶ 47    Aggravated battery with a firearm is a Class X felony. 720 ILCS 5/12-3.05(h) (West 2022). The sentencing range is 6 to 30 years. 730 ILCS 5/5-4.5-25(a) (West 2022). The State argued that the defendant should be sentenced to 28 years in the IDOC. The circuit court, after considering factors additional factors in mitigation, sentenced the defendant to eight years less than the State's recommendation. The defendant was sentenced within the statutory sentencing range and received a sentence of 20 years in the IDOC. Given this record, we find that the circuit court did not abuse its discretion in its sentencing decision.

¶ 48                                    III. CONCLUSION

¶ 49    For the foregoing reasons, we affirm the sentencing judgment of the circuit court of

Christian County.

¶ 50    Affirmed.