Filed 8/16/21  P. v. Finocchio CA1/4

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>JOSEPH MICHAEL FINOCCHIO,<br><br>        Defendant and Appellant. | A160469<br><br>(Solano County<br>Super. Ct. No. FCR348373) |

Defendant Joseph Michael Finocchio appeals a judgment convicting him of attempted murder with several gun use enhancements. He contends the trial court erred in admitting into evidence the victim's preliminary hearing testimony and statements made by the victim to the police shortly after the shooting. We find no prejudicial error in the admission of this evidence at trial. The Attorney General notes, however, and defendant does not dispute, that the trial court failed to properly sentence defendant on one of the gun use enhancements. Accordingly, we will remand for resentencing on the enhancement and affirm the judgment in all other respects.

1

## Background

Defendant was charged with one count of premeditated attempted murder. (Pen. Code,[1] §§ 187, subd. (a), 664, subd. (a).) The information alleged that he personally used a firearm and personally and intentionally discharged a firearm (§§ 12022.5, subd. (a), 12022.53, subds. (b) & (c)) and that he had a prior strike conviction (§§ 667, subds. (b)–(i), 1170.12) and a prior serious felony conviction (§ 667, subd. (a)(1)).

At trial, testimony was presented that defendant knew the victim through defendant's ex-girlfriend, Nancy,[2] and that defendant was angry with the victim because he believed the victim was dating Nancy.

Nancy testified that she and defendant broke up about a week before the shooting. On the day of the shooting, she and the victim went to the house she had shared with defendant to collect her belongings. As she was pulling out of the driveway, she saw defendant exit a neighbor's house. The victim told her to drive away. As she left the scene, she saw the victim walking towards his truck; she did not see any signs of an altercation between him and defendant. She waited for the victim four or five blocks away from the house, but when he did not arrive she drove back towards the house. As she was doing so, the victim came driving towards her. He stopped his truck, climbed into her truck and said, "Take me to the hospital." At the hospital, the victim was treated for a gunshot wound to his chest.

The victim was unavailable to testify at trial. Over defendant's objection, a transcript of his preliminary hearing testimony was admitted into evidence. At the preliminary hearing, the victim acknowledged his

---

[1] All statutory references are to the Penal Code unless otherwise noted.

[2] For the purpose of confidentiality, we refer to defendant's ex-girlfriend by her first name only.

2

friendship with Nancy but then answered "I don't remember" to virtually every question posed by the prosecutor. When asked if he was intentionally saying he did not remember things that he actually remembered, he replied "No. I really don't remember." Defense counsel did not ask the victim any questions at the preliminary hearing.

Over defendant's objection, two police officers testified to statements the victim made to them while at the hospital The victim told Officer Laura Bellamy that as he sat in the passenger seat of his truck, he saw someone walk to the front of the vehicle. The person fired a gun and he heard a gunshot. He moved to the driver's seat and reversed the vehicle. He heard three more gunshots and drove away. He believed the last shot struck him in the chest. He did not "see who [the shooter] was" but he described the shooter as "a shorter[] white male, wearing a darker colored beanie." He had not seen defendant while at the residence and did not know if defendant was the one who shot him. He told the officer that about a week before the shooting when he and Nancy had previously tried to retrieve her belongings, he and defendant had gotten into a fight. He claimed, however, that "after the scuffle, there's no beef." Despite these initial statements, towards the end of the interview he acknowledged that "he was 90 percent sure [defendant] did it." He told the officer that he could identify defendant when defendant stood on the grass as he drove forward but explained he was not forthcoming because "he didn't want to be labeled as a rat."

After telling the officer he was 90 percent sure defendant was the shooter, the victim explained that defendant was there when he and Nancy arrived at the house to retrieve her belongings. Because defendant "was yelling," the victim told Nancy to leave while he gathered the rest of her clothing. As he drove away, he saw defendant on the corner. He swerved as

3

defendant fired three shots. He was hit by the last shot. When he saw Nancy's truck approaching, he honked his horn to get her attention, told her he had been shot, and asked her to take him to the hospital.

Police Detective Lisa Sampson spoke with the victim at the hospital after his interview with Officer Bellamy. The victim identified defendant by his photograph as the shooter. He clarified that at the time he told Nancy to leave he had not seen defendant. Rather, he heard two men arguing and assumed that one of them was defendant. As he got into his truck, someone shot in his direction and yelled something like, "I thought I told you not to come back around here." As he tried to drive away, the shooter, who was standing in the grass at the corner, fired three shots, striking him in the chest with the last shot.

A .22 caliber handgun subsequently was found hidden in defendant's house. The gun used bullets consistent with the casings recovered near the scene of the shooting.

The jury found defendant guilty of attempted murder and found the firearm allegations true, but found not true the allegation that defendant committed the crime willfully, deliberately, and with premeditation. The trial court found that defendant had suffered a prior strike conviction and a prior serious felony conviction.

Defendant was sentenced to an aggregate term of 29 years in prison: the midterm of seven years for the offense, doubled to 14 years because of his prior strike, plus 10 years for using a firearm pursuant to section 12022.53, subdivision (b) and an additional five years pursuant to section 667, subdivision (a). The court stayed the section 12022.5 enhancement pursuant to section 654 and dismissed the section 12022.53, subdivision (c) enhancement pursuant to section 1385.

Defendant timely filed a notice of appeal.

## Discussion

1. *The victim's preliminary hearing testimony was properly admitted pursuant to Evidence Code section 1291.*

"A criminal defendant has the right, guaranteed by the confrontation clauses of both the federal and state Constitutions, to confront the prosecution's witnesses." (*People v. Herrera* (2010) 49 Cal.4th 613, 620.) However, there is " ' "an exception to the confrontation requirement where a witness is unavailable and has given testimony at previous judicial proceedings against the same defendant [and] was subject to cross-examination." ' " (*Id*. at p. 621.) California codifies this exception in Evidence Code section 1291, subdivision (a), which provides that "former testimony," such as preliminary hearing testimony, does not constitute inadmissible hearsay "if the declarant is unavailable as a witness,"[3] and "[t]he party against whom the former testimony is offered was a party to the action or proceeding in which the testimony was given and had the right and opportunity to cross-examine the declarant with an interest and motive similar to that which he has at the hearing" (*id.,* subd. (a)(2)).

Defendant challenges the admissibility of the victim's preliminary hearing testimony under section 1291, subdivision (a)(2) on two grounds. He argues that the victim's "refusal to testify" deprived him of an adequate opportunity for cross-examination. Alternatively, he argues that given the victim's testimony, his interest in impeaching or challenging the victim at the

---

[3] Under Evidence Code section 240, subdivision (a)(5), a witness is unavailable when he or she is "[a]bsent from the hearing and the proponent of his or her statement has exercised reasonable diligence but has been unable to procure his or her attendance by the court's process." Defendant does not challenge the trial court's finding that the victim was unavailable at trial.

5

preliminary hearing was not the same as his interest in challenging that testimony at trial. We disagree.

Defendant was given the opportunity to cross-examine the victim at the preliminary hearing but declined to do so. Counsel's decision not to cross-examine the victim because of the victim's purported lack of memory does not mean that defendant was denied the opportunity for cross-examination. By failing to undertake any cross-examination of the victim, defendant failed to establish a record for his claim. When the victim was called to testify at the preliminary hearing, one officer had already testified to his identification of defendant as the shooter. Had counsel directly confronted the victim with his statements to the police on cross-examination and had he remained completely silent or unresponsive, it might be argued that his silence or unresponsiveness effectively denied defendant his constitutional right of confrontation.[4] We cannot presume, however, that the victim would have remained silent or unresponsive to questions defense counsel never asked. (See *State v. Nyhammer* (2009) 197 N.J. 383, 414 [963 A.2d 316, 334] ["That counsel decided to forgo critical cross-examination because of [the witness's] unresponsiveness to many questions on direct does not mean that defendant was denied the opportunity for cross-examination."]; *People v. Garcia-Cordova,* 2011 IL App (2d) 070550-B [963 N.E.2d 355, 370] ["Where a defendant does not attempt to cross-examine a witness on her out-of-court

---

[4] In his reply brief, defendant identifies the type of questions he might have asked the victim at the preliminary hearing. "The important questions had to do with [the victim's] statements to the police which he said he did not remember. How well could he see the shooter? How far away was the shooter? Had he consumed drugs or alcohol that evening? Did drugs or alcohol affect his ability to observe? What was the basis of his identification of [defendant]?"

statements, he cannot complain that the witness was unavailable for cross-examination."].)

For this reason, defendant's reliance on *People v. Giron-Chamul* (2016) 245 Cal.App.4th 932 is misplaced. In that case, the court held that the victim's refusal to answer questions on cross-examination denied defendant his constitutional right to confrontation. (*Id.* at p. 961.) The court emphasized, however, that the issue before it involved the minor's "refusal to answer . . . important questions" on cross-examination, not her real or feigned failure to remember. (*Id.* at p. 965 [noting that "a witness's failure to remember, whether real or feigned, generally does not deny the defendant an opportunity for effective cross-examination"].) The court expressly observed that "[t]his is not a case where the defendant had an opportunity for cross-examination but chose to forgo it as a matter of strategy." (*Id.* at p. 964, citing *State v. Nyhammer*, *supra*, 197 N.J. at p. 414 [963 A.2d at p. 334].)

Defendant's suggestion that he had no motive to cross-examine the victim at the preliminary hearing is not persuasive. As noted above, by the time the victim testified at the preliminary hearing, Officer Bellamy had already testified to the victim's prior statement and identification of defendant as the shooter. Thus, the motivation for cross-examining the victim at the preliminary hearing—to call into question the reliability of his prior identification—was no different than the motivation for doing so at trial.

Accordingly, there was no error in the admission at trial of the victim's preliminary hearing testimony.

2. *The victim's statements to the police were admissible under Evidence Code section 1294.*

Evidence Code section 1294 permits the statements of an unavailable witness to be introduced at trial as prior inconsistent statements of the witness if the statements were previously introduced at the preliminary

7

hearing.[5] Evidence Code section 1294 was "designed to overcome the admissibility problems associated with out-of-court statements which are inconsistent with an unavailable witness's former testimony by requiring that the recorded statement be introduced at the prior hearing where the witness actually testified. It is well settled that the inherent unreliability typically associated with such out-of-court statements may be deemed nonexistent when the defendant has had an opportunity to question the declarant about the statements." (*People v. Martinez* (2003) 113 Cal.App.4th 400, 409.)

Here, Evidence Code section 1294 applies because (1) the victim was an unavailable witness at trial; (2) his testimony at the preliminary hearing was admitted at trial pursuant to Evidence Code section 1291; (3) the statements that he made to the police officers were inconsistent with his testimony at the preliminary hearing that he could not remember the shooting[6]; and (4) defendant was given an opportunity to cross-examine the victim about his

---

[5] Evidence Code section 1294, subdivision (a) reads: "The following evidence of prior inconsistent statements of a witness properly admitted in a conditional examination, preliminary hearing, or trial of the same criminal matter pursuant to Section 1235 is not made inadmissible by the hearsay rule if the witness is unavailable and former testimony of the witness is admitted pursuant to Section 1291: [¶] (1) A video or audio recorded statement introduced at a conditional examination, preliminary hearing, or prior proceeding concerning the same criminal matter. [¶] (2) A transcript, containing the statements, of the conditional examination, preliminary hearing, or prior proceeding concerning the same criminal matter."

[6] Defendant does not challenge the trial court's finding that the victim's statements to the officers were admissible as prior inconsistent statements because the victim's lack of memory could be found to be feigned and his testimony was deliberately evasive. (See *People v. Johnson* (1992) 3 Cal.4th 1183, 1219–1220 [as long as there is a reasonable basis for concluding witness's lack of memory is evasive and untruthful, admission of prior statements is proper].)

statements at the preliminary hearing. Defendant's arguments to the contrary are not persuasive.

In his opening brief, defendant argues that Evidence Code section 1294 is not applicable because the victim's statements to the police officers were introduced at the preliminary hearing through the officers' testimony and not by introduction of a recording of the statements. Section 1294, however, does not require that the prior inconsistent statements be recorded and admitted in that form at the preliminary hearing. Section 1294, subdivision (a)(2) expressly contemplates that the statements may be introduced through a witness's testimony.

*People v. Martinez, supra,* 113 Cal.App.4th at page 409 is not to the contrary. In that case, the court held that a recording of prior inconsistent statements made to the police by an unavailable trial witness was not admissible because the recording had not been introduced at the preliminary hearing. The court explained, "to be admissible at trial under Evidence Code section 1294, the recording of [the witness's] statement first should have been introduced into evidence at the preliminary hearing. [Citation.] It was not. Instead, [the witness] was asked to review specific excerpts of a transcript of his interview with the police to see if it refreshed his recollection, and the prosecutor read from portions of the transcript to impeach [the witness]. [The detective] who questioned [the witness] also testified at the preliminary hearing that [the witness] had made the statements he denied making. But neither the transcript nor a recording of the interview was introduced as evidence at the preliminary hearing. Thus, while the transcript of [the witness's] preliminary hearing testimony was properly admitted at trial due to his unavailability [citation], the court erred in allowing the jury to hear the actual recording of his statement to the police." (*Ibid.*)

9

The Attorney General acknowledges that under section 1294, subdivision (a)(2), the proper procedure would have been to introduce at trial the transcript of the officers' preliminary hearing testimony reflecting the prior inconsistent statements. The Attorney General correctly argues, however, that any error in that regard has been forfeited because defendant "failed to object on this ground below. Had he done so, the prosecutor would have presented [the victim's] prior inconsistent statements through the officers' preliminary hearing testimony. [Defendant's] failure to object forfeited any reliance on this error as a basis for reversal because it deprived the prosecution of an 'opportunity to cure the defect.' (*People v. Coleman* (1988) 46 Cal.3d 749, 777.)"

Accordingly, there was no reversible error regarding the admission of the officers' testimony regarding the victim's statements.

3. *The matter shall be remanded for resentencing on the section 12022.5 enhancement.*

Section 12022.5, subdivision (a) punishes "any person who personally uses a firearm in the commission of a felony or attempted felony" with "an additional and consecutive term of imprisonment in the state prison for 3, 4, or 10 years, unless use of a firearm is an element of that offense." Section 12022.53, subdivision (b) punishes "any person who, in the commission of [an attempted murder], personally uses a firearm" with "an additional and consecutive term of imprisonment in the state prison for 10 years." Section 12022.53, subdivision (f) provides, however, that "[o]nly one additional term of imprisonment under this section shall be imposed per person for each crime" and that any enhancement involving a firearm specified in section 12022.5 "shall not be imposed on a person in addition to an enhancement imposed pursuant to this section." In *People v. Gonzalez* (2008) 43 Cal.4th 1118, 1130, the court explained that, "after a trial court imposes punishment

10

for the section 12022.53 firearm enhancement with the longest term of imprisonment, the remaining section 12022.53 firearm enhancements and any section 12022.5 firearm enhancements that were found true for the same crime must be imposed and then stayed." As the Attorney General asserts, the court made clear that a stay in such circumstances was governed by section 12022.53, subdivision (f), not Penal Code section 654, " 'which applies only to offenses punishable in different ways, not to prohibited enhancements committed in the commission of an unstayed offense.' " (Quoting *Gonzalez*, *supra*, at p. 1123, fn. 5.)

Here, the court imposed a 10-year term on the section 12022.53, subdivision (b) enhancement. The court stayed the section 12022.5 enhancement under section 654 rather than selecting a term and staying execution under section 12022.53, subdivision (f). Defendant does not dispute the Attorney General's argument that the matter should be remanded so that the court can select a term under section 12022.5 and then stay execution under section 12022.53, subdivision (f). (See *People v. Bradley* (1998) 64 Cal.App.4th 386, 391 ["The failure to impose or strike an enhancement is a legally unauthorized sentence subject to correction for the first time on appeal."].) Accordingly, we shall remand for resentencing on the section 12022.5 enhancement.

## Disposition

The matter is remanded for resentencing on the section 12022.5 enhancement. The judgment is otherwise affirmed.

POLLAK, P. J.

WE CONCUR:

STREETER, J.
BROWN, J.

11